JOHN WHITEAKER, *et al.*, Appellants, *v.* WILLIAM H. HALEY, Respondent.

*Appeal from Lane County.*

1. Rights and powers of a State over domestic taxation.
2. Domestic taxes payable in gold and silver coin.
3. Construction of a statute, which, without repealing existing statutes, changes, materially, the order and effect thereof.

ON the 17th of January, 1865, plaintiffs, appellants, residents in and tax-payers of Lane county, Oregon, tendered to respondent, then sheriff of Lane county, and tax-collector therein, the sums of money assessed against each of plaintiffs for State, county and school taxes for the year 1864. The sheriff had a properly certified tax list and warrant. The tender was made in U. S. treasury notes, commonly known as "legal tender" currency. The sheriff refused to receive the money tendered, or give receipts, as the plaintiffs claim

Whiteaker *v.* Haley.

he should have done.   Plaintiffs sued out an alternative writ
of mandamus, and at chambers, on the 10th day of Feb-
ruary, 1865, the sheriff answered, setting forth the reasons
why he had refused to receive said money.   To this answer
plaintiffs demurred for insufficiency, making these points :

1st. The act of the legislature, entitled "An act to pro-
vide for the disposing of the several kinds of money in the
public treasury," approved October 21st, 1864, referred to in
sheriff's answer, is void, as to all provisions therein, provi-
ding for the collection of taxes from tax-payers, for the rea-
son that the same are not embraced or indicated in the title,
and are contrary to the Constitution of Oregon, in reference
to such provisions.

2d. The second and third sections of said act, which
provide for the payment of salaries and other claims in coin,
have no reference to the duties of sheriff in the collection of
taxes.

3d. The act amending the act relating to assessments
and collection of taxes has no reference to the duties of the
sheriff in the collection of taxes, but only provides that
county treasurers shall pay over, in gold and silver coin, the
first of all such moneys that shall come into their hands.
But section 46, which is the only section referred to in said act,
is itself repealed by an "Act relating to assessments, and col-
lection of taxes," passed October 21, 1864.

4th. The sheriff admits the tender of lawful money.   The
act last above referred to only requires the sheriff to collect
taxes in lawful money.

5th. The provision requiring coin for taxes, has no appli-
cation to taxes of the current year, as alleged to have been
tendered.

6th. All legislation of the State, excluding the right of
the tax-payer to pay his taxes in lawful money, is void and
of no binding force ; the same being in contravention of the
laws of Congress, declared to be valid by the Supreme Court
of Oregon.   (*Term of* 1863.)

The circuit judge, at chambers, overruled the demurrer, refusing the peremptory writ of mandamus, and gave judgment for respondent, and plaintiffs below appeal.

*S. Ellsworth, Esq.,* for appellants.

I. The appellants allege that the act of October 21, 1864, can be at most only a good law for the subject matter specified in its title, to wit: For disposing of the various kinds of money in the public treasury, and that the provision in the act specifying the kind of money in which taxes shall be paid is wholly void, being in violation of *section* 20, *article* 4, *Constitution of Oregon.* In other words, that the subject of collection of taxes is not embraced in or properly connected with the subject of paying out moneys of the public treasury.

1st. The officers who collect taxes have nothing to do with paying it out of the treasury, and would, therefore, have no occasion nor be at all likely to look into an act with the title referred to. One object, doubtless, of the constitutional provision is to make it unnecessary in many cases to look beyond the title of an act. 2d. The matter of collection of taxes is finally provided for in an another act, passed at same session, a lengthy act, comprehensive and exhaustive in all the details of collection of taxes. 3d. It is said to be a matter of history (see journals of the session of 1864,) that the words gold and silver coin were stricken out of the general tax act, and it is not therefore probable that the same legislature would have intentionally inserted so important a provision into an obscure act, with another title, but that it was passed by reason of not being properly indicated by the title; another evidence of the value of the constitutional provision referred to.

II. But the petitioners claim that even if properly entitled and passed, the provision under contemplation requiring taxes to be paid in coin, *if construed as by the sheriff in this case to exclude other lawful money of the United States,* must

be held to be in violation of the act of Congress passed February 25th, 1862. That act of Congress having been declared constitutional by the highest judicial tribunal of this State, must be the supreme law of the State, any State law to the contrary notwithstanding. (*Article* 6, *Constitution of U. S.*) And that act provides that the money therein specified (same as tendered in this action) is a lawful money, and a legal tender for all debts public and private, with one solitary exception, viz., duties on imports. A tax, if a debt, clearly falls within the scope and meaning of the legal tender clause of the act of Congress; and because this is so the Supreme Court of California found it necessary, in the case reported (20 *Cal.*, 348), to hold that a tax was not a debt. One of the first questions to be determined therefore, is whether that decision is good law, and to be followed by this court.

1st. What was the probable intention of Congress in framing the act? The answer would seem to be obvious that it must have been their intention to make the act absolutely universal, the only exception specified being that of debts due to foreign nations for importations, in regard to which we must be governed by the law of nations. No species of debt or obligation to pay money *within* the United States, whether between individuals or individuals and the government being excepted. This in fact is an essential ingredient, if not a *sine qua non* in the creation of a circulating medium with a legal tender property attached to it, that it should be absolutely without exception in its application. To allow the law itself to be construed different ways in different tribunals, or different localities to legislate at their option adversely to the permanent law of the land, would be to at once destroy the whole value and effect of the law itself.

But whether this general inference be correct or not, it is plain that inasmuch as one tax or duty (for they are exchangeable terms) to wit, that on imports is excepted, then all other taxes are left to be included in the phrase "debts public or private."

2d. Has the State the power of designating any specific money or thing in which taxes shall be paid to the exclusion of lawful money? To this appellants say no; that this right of taxation is a clearly defined power. It is not the right of eminent domain by which private property can be taken for public use, nor is it the police power under which, in an emergency, the personal services of the citizen may be required for public defense. . It is simply the right to exact contributions in money to carry on the government and protect society, and the right must be exercised with absolute equality and general application; both which ingredients, being incorporated in the Constitution of the State and the United States, show that it is not an inherent right of the government, but is the result of an implied contract between the individual and the government, the consideration for which is the protection afforded to the former by the latter.

The proper authority makes the levy and assessment, but even that may be scrutinized and corrected, if wrong, by the individual; but after the levy which springs from the nature of the power of taxation, and after the time for amendment expires, at which time the liability of the tax-payer becomes fixed, then the State stands in the same position as any other creditor, must seize property, give due notice, and publicly sell, and must accept redemption money when offered. And any lawful money that will in law extinguish the claim, of any other creditor must also satisfy this claim at any stage of the proceeding.

To avoid the force of this reasoning the Supreme Court of California undertakes to give several attributes of a tax, to show it is not a debt, first defining, and correctly, that "a debt is a sum of money due by contract expressed or implied."

They say a tax is not founded on contract, but we have already shown that it is the result of an implied contract; and see 4 N. Y. Appeals Reports, page 419; 13 N. Y. Appeals Reports, 147; Sedgwick on Const. Law, page 498.

They say it does not establish the relation of debtor and

creditor. This is simply begging the question in dispute, but as we have already shown, is an erroneous view; and see *Oregon Reports, page* 358. They say it does not draw interest. This is an error, in our State at least; there is a penalty by way of per cent added after a certain delay, precisely analagous to interest, the rate being regulated entirely by statute, but the principle being applied to taxes as well as other debts. *See sections* 36, 37, 47, 49, 53, 56, 57, 65, 66, 80, and 94 of the old act relating to assessment of taxes, in each of which the principle of interest on unpaid taxes is fully recognized.

And they say further, to close the list, that a tax is not the subject of attachment, nor liable to set-offs. In regard to which it may be said that neither attachment nor set-off are incident to any debt at common law, but only by statute; and the statute may as well, whenever the legislature so provides, extend the same provision to taxes.

It is also made a point of support for the California decision that Congress, in enumerating the various kinds of dues to the United States, mentions taxes and debts separately, as though they had a separate meaning. But so also are debts and demands mentioned separately; but who would pretend that because of that mode of enumeration a debt was no longer a demand? More than this, it is of no consequence how Congress describes dues to the United States. The question which concerns us is as to what other demands are intended to be embraced in the legal tender clause, and there we find "all debts public and private, except duties on imports." As before remarked, if duties (on taxes) are not debts then why was the exception necessary?

"All debts must certainly, therefore, include taxes. A debt, according to Webster, 1 *Bouvier*, is that which is due or owing. A tax is so much of the allegiance *we owe* to government as can be computed by dollars and cents. This view is still further strengthened by the fact of the practical impossibility of collecting taxes in coin. After the act of Congress referred to was in force every person is obliged to

accept the new issue of money as lawful money and the legal equivalent of gold and silver. Henceforward payments of gold coin are dispensed with, and it becomes practically unattainable; and for the government which has brought about this state of things to exact gold and silver from the tax-payer, after placing it beyond his legal reach, would be more cruel than the fabled treatment of Tantalus, and more oppressive than the Egyptian master who requried the Hebrew slave to continue to furnish brick after depriving him of straw. No person is required to purchase imported goods. If he chooses to do so he must obtain gold to pay the duty, but the tax-payer has no choice. He *must* pay his share of the public burden or his property be liable to sacrifice, and he must also be allowed to pay in whatever can be forced on him as lawful money. Again, suppose his property is exposed for sale, what can prevent the buyer paying the purchase price in lawful money? The act of October, 1864, does not empower the sheriff in selling property to make the payment of coin a condition precedent. For his power to sell property at all is derived wholly from another act where nothing is said except purchase money, without reference to the kind of money. That a tax means simply a contribution in money, see 6 *Johns, N. Y.,* 92.

The authority relied on by the California court (3 *Metcalf,* 520) does not decide that a tax is not a debt at all, but simply involves a question of set-off under a special statute.

III. But the act of October, 1864, has no application to the taxes referred to in this proceeding, for the obvious reason that the taxes were levied and became due and payable in September, several weeks before this act was passed.

IV. If the sheriff should rely on the allegation, in his return, that section 46 as amended in October, 1864, requires coin to be collected by implication, it may be answered: 1st. That section 46 has no reference to the collection of taxes by the sheriff, simply points out the duty of county treasurer in paying over. 2d. That section 46, although amended, is repealed

by the act relating to assessment of taxes.    3d. That no intendments nor inferences from a State law shall be allowed to contravene or destroy the manifest provisions of a law of Congress.

WILSON, J.   Admitting the proper supremacy of the Constitution and laws of the United States over and upon all proper subjects of legislation, does it follow that Congress can, in any way, interfere with State taxations, either as to measure of assessment or as to the manner or means in which collection thereof may be made?   It is now too late to question the rule of construction of the rights and powers of the general government or to establish a different one.   That government acts alone by delegated authority, and can exercise no other than such as may be necessary to carry fully into effect some granted power.   In doubtful or disputed questions, if the Constitution, or proper legislation, does not adequately define them, or if adjudication thereof has not already been made, we must follow the general rule for construing statutes; and when, from the statute or the instrument itself, the meaning is not clear, recourse must be had to the peculiar views and motives controlling its framers, at the time of forming the Constitution or enacting the law, the question then becomes one of intention.   The only provisions in the Constitution of the United States referring to the subject of taxation, to which it is needful to refer, are these: Article 1, section 8.  " The Congress shall have power to lay and collect taxes, .duties, imposts and excises; to pay the debts and provide for the common defence and welfare of the United States."   Subdivision 7, section 8.  " To make all laws which shall be necessary and proper for carrying into execution the foregoing powers."   Section 9, same article: " No capitation or other direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken."   " No tax or duty shall be levied on articles exported from any State."   Section 10, same article: " No

State shall coin money, emit bills of credit, or make any-thing but gold and silver coin a tender in payment of debts. No State shall, without the consent of Congress, lay any imposts or duties on imports to, or exports, except what may be absolutely necessary for executing its inspection laws." Section 10, of the amendments, contains the limit and rule: " The powers *not delegated* to the United States by the Con-stitution, *nor prohibited* by it to the States, are reserved to the States respectively, or to the people."

These contain the affirmative powers given to Congress, and define what a State may not do. Congress has power to lay and collect a tax. A State may not lay imposts or duties on imports or exports, with a single exception. Congress has not power to lay and collect all taxes, else why, in the same sentence almost, prohibit the States from laying one kind of an indirect tax? Does not that prohibition admit that the right is in the States to levy and collect all other taxes, proper for their maintenance? What is claimed in that behalf by the framers of the Constitution? For conve-nience, we cite from the opinion of the circuit judge: In the 33d and 34th numbers of the Federalist, Alexander Hamil-ton has very clearly defined the extent of the powers of the general government, and of those of the individual States in matters of taxation. He says: " Though a law, therefore, laying a tax for the use of the United States would be supreme in its nature, and could not be legally opposed or controlled; yet, a law abrogating or preventing the collection of a tax laid by authority of a State, unless upon imports or exports, *would not be the supreme law* of the land, but an *usurpation* of a power not granted by the Constitution" * * " the inference from the whole is that the individual States would, under the pro-posed Constitution, retain an *independent* and *uncontrollable* authority to raise revenue to any extent of which they may stand in need, by *every kind* of taxation except duties on imports and exports;" and this, he says, " reconciles an

Whiteaker *v.* Haley.

indefinite constitutional power of taxation, with an *adequate* and independent power in the States to provide for their own necessities." Could there be a plainer or more clear defining of the limits to the power of the general government and of the respective States over that subject; made, too, by one who had more to do with shaping the character of the Constitution of our land than had any other person, by one noted for his liberal construction of constitutional power, and who carried federal authority to its utmost limit, and was often charged with *restricting* the rights of the States? There was no gainsaying of this view, and hence we may infer rightly that Madison, Jay, and his fellow statesmen, coincided fully with and assented to its correctness in extent and principle. Again, the power over State taxes is nowhere *expressly* given to Congress, nor is it *expressly* prohibited to the States, consequently section ten of the amendments yields that power to the States. It was rightly considered by the convention to be a matter peculiarly belonging to the States, and if so, as to the time of levy and amount, then equally as to the *means* by which the tax when levied could be paid. If a State should deem it necessary to lay a tax at a certain season of the year, and provide for its collection in the products of the soil, or in the physical services of its citizens, we know of no power on earth possessing the right of interference or prohibition; and the *moral obligation* exists why a State should pay its creditors in coin, there is no power that can enforce it, and. Congress could in no way interfere. (*State Treasurer* v. *Wright*, 28 *Ill.*, 512.) The revenue is the life of the State, and for Congress to say when and where and in what manner it must be laid and collected, in other words, to say when a State should breathe, would be giving Congress the sole power of life and death over a State. What are the other rights worth, when that upon which its life depends is denied. Interference as to any one of the incidents of levying and collecting taxes, would as effectually take away State inde-

pendence as it would to wholly deny the right. (*Dobbins* v. *Comrs. of Erie Co.*, 14 *Curtis, S. C.*, 373.)

The Supreme Court of Oregon, at its September term, 1864, held as constitutional the act of Congress providing for the issue of treasury notes, and of course those notes are applicable as money, and as legal tender for the payment of all matters upon which the United States Congress properly and fairly legislated. If our first position is true, then Congress could not, and did not make those notes an absolute discharge for State taxes; that would remain with the States.

Assuming, however, that Congress *might* have made them such a legal tender as would apply to the payment of such taxes. Was there any such legislation? Or, on the other hand, was there a want of such legislation, on the part of the State of Oregon, as would make these notes inapplicable to the case in hand? The existence of either might sustain the appellant's claim. If our position be correct, there might be kinds of legal money which the State could say directly, or by presumption of law indirectly, were inapplicable to payment of taxes, or could by law make its taxes payable only by personal service, or in certain kinds of property. As the law now stands, the taxes are payable in money; and the sheriff is required to collect them, taking therefor legal money, or, as we hold, money made applicable for that purpose. A brief examination of the act of Congress, providing for the issue of treasury notes, will show that State taxes are not included in the subjects to the discharge of which those notes are made legal tender. Previous to the act of 1861, gold and silver coin were undoubtedly the only legal tender in Oregon; the constitutional prohibition that no State could make anything but gold and silver a legal tender, had never been modified. By the provisions of that act, and as construed by our court, a new currency became a legal tender; to what extent? As changing the existing order of things, its provisions, creating a *limited currency*, are to be *strictly construed* in determining how far they changed the relation of debtor and creditor, and

Whiteaker *v.* Haley.

of State and citizen; and that currency would be a legal tender only *so far* as is clearly pointed out in that law. Congress can change the currency, but the extent of that change must be definitely expressed. It cannot repeal or override State laws, unless the latter are so inconsistent or repugnant to the constitutional act of Congress as to prevent the conclusion that both may stand by fair construction. The books define taxes as a contribution levied or imposed by government upon citizens or individuals for the service of the State. With us they mean the poll and property assessment of the statute. They do not, certainly, come within the meaning of public or private debts. They have none of the characteristics of a debt. A debt is something arising from and due upon contract; and before an enforcement of that something due can happen, there must come the processes of the law and the solemn adjudications of the courts. A tax is a judgment in its inception, fixed without the consent of the tax-payer; perhaps without his knowledge, as to assessment, levy and collection; it needs not the issuance of an execution to enforce it; if not paid in due time, penalties follow; and, willing or not, upon default, the delinquent's personal property passes by collector's sale to the purchaser, or he loses the title to his real estate. There is none of the mutuality which enters into a contract, and none of the legal incidents of a debt; are not subject to attachment, are not off-sets, bear no interest, and need no solemn acts of courts to enforce them. It is clearly confessed, upon the reading of the act of 1861, that taxes and debts are distinct subjects. The section declares that the treasury notes are payable for all *taxes,* internal duties, excises, *debts* and demands of every kind due to the United States, except for interest on bonds and notes. So far as the United States are concerned, then, there can be no doubt of the extent of their *limited* applicability. It first mentions the subject of *taxes,* and then, in the same connection, enumerates *debts* and *demands* of every kind. Why do not the latter include taxes, if taxes are debts? As

to the States and the citizens thereof, the language of the act is peculiar : " And shall also be lawful money and a legal ten- der in the payment of all *debts*, public and private, within the United States." In what does the word *debts* in the latter differ from the same word used in the former clause of the same section ? There it stood for a distinct class of subjects from those including or relating to taxes. What court will construe that a statute uses an essential word in the same sec- tion in two wholly different meanings ? We cannot violate the rules of construction so much as to declare that the two uses of the word are not identical in meaning. In the one case the word debt did not include taxes, and in the other it does not. There is no difference between a United States tax and a State tax, save in the authority used in enforcing collection, and in the name. We must grant to the members of Congress common sense in the use of the words contained in the statutes they frame. The doctrine here is fully sus- tained in *People* v. *Shearer*, 30 *Cal.*, 645, and the authorities there cited.

We conclude, then, assuming that Congress could control a State as to the kinds of money in which its taxes were to be paid, that Congress has not done so in the act of 1861, but has carefully refrained from such interference, leaving it for the States to change any of their existing laws and make that money applicable or not, at pleasure. We think Congress has not the right to control or interfere in that matter.

As to the third point. In the absence of any provisions of our statute as to the kind of money proper for the payment of taxes, it might be supposed that any lawful money would satisfy the demand. At the time when the assessed taxes for the year 1864, became *due* and *payable*, the *Statutes of Ore- gon, on page* 438, *section* 32, *title* 5, in the latter clause of the section, provides thus : " And the sheriff shall in all cases pay over to the county treasurer the full amount of State and school taxes in gold and silver coin." And *section* 46, *same title, page* 441, provided that : " On or before the first Mon-

Whiteaker *v.* Haley.

day in February of each year, the several county treasurers in this State, shall pay over to the State treasurer in gold and silver coin, the amount of State taxes charged to their respective counties; which State tax shall be paid out of the *first* moneys collected and paid into the county treasury." Thus stood the law under which the assessment and apportionment had been made, and under which the collector for a long time had in his possession the lists and warrant for the collection of taxes, and *should have enforced the same* before the tender in this case was made. No mistake could be made as to the language of the statute; there was a clear and certain provision that certain taxes must be paid by the tax-payer in gold and silver coin; and it makes no difference in this case, that other taxes beside the State and school, are included in the sums assessed against each of plaintiffs, since the whole amount is a unit and no objection is made to our so considering it. The statute provided a heavy penalty if the sheriff did not pay over all the money by him so collected, and at the same time provided that he must pay it over in gold and silver coin; and in another section, requires the county treasurer to pay over by a certain day, the State tax, out of the *first* moneys collected and paid into the county treasury, and they must make that payment in gold and silver coin. If any other than gold or silver coin could be paid on taxes, and the treasury filled with cloth or paper dollars, how could the treasurer pay over gold and silver coin. A heavy penalty rested upon both the sheriff and treasurer to pay coin, and no other construction could satisfy the law, than that the State and school taxes must be paid in coin. Plaintiffs claim that these sections have been repealed, admitting to some extent that under those statutes taxes were made payable only in coin.

On the 21st day of October, while the collecting officers of the different counties were collecting taxes in gold and silver coin, the legislative assembly interfered somewhat with the existing laws. They passed an act entitled "To provide

for the disposing of the several kinds of money received into the public treasury;" in one clause of the first section, requiring that all taxes should be collected and paid in gold and silver coin, and not otherwise ; and in the second clause, that the county treasurer in each county shall transmit to the State treasurer the amount of the taxes which may accrue in that county, in the gold and silver coin of the United States, and not otherwise; and section second provides that all salaries and claims against State or municipal corporations, must be discharged in coin, or its equivalent. It is claimed that, under *section* 20, *page* 106 *of the Code*, these sections, so far as they treat of the collection of taxes, are not constitutional, that subject not being embraced in the title of the act. Passing that question for the present, we find that, on the same day, the assembly passed an act amending *section* 46, *title* 5, of the act of 1854, enlarging the time for the return of money by the county treasurer, and still requiring their payment to be in coin. On the same day the assembly passed a general act repealing *title five and six* of the act of January, 1854, which titles originally included sections thirty-two and forty-six, above referred to, so that three acts referring to the same subject were passed on the same day. We hold that section forty-six of the act of 1854 was not repealed by the act repealing titles five and six, since that section had been carved out and preserved as a law by a distinct amendatory act. The same obligation remained upon county treasurer to pay over moneys to the State treasurer in coin as before ; in other words, the State tax must come in coin, and in no other way.

A change was made in section thirty-two, striking out the clause that the sheriff was to pay over State and school taxes in gold and silver coin, and enacting a more sweeping clause in the act claimed as unconstitutional. There can be no question but that clause second of section one of the act of October 21, 1864, providing for the disposal of the several kinds of money received into the public treasury, is consist-

ent with the Constitution. Then that clause and section forty-six were both in force from and after October 21, 1864. Without disposing of the question as to the inconsistency or constitutionality of clause first of section one of the act of October 21, 1864, we find that full assessment and apportionment, and partial collection of the taxes of 1864 had been made, while *all* the provisions of the old law were in full force, in our judgment clearly requiring payment of taxes to be made in coin. We find still the same provisions, excepting that of section thirty-two, existing in the present law; twice distinctly requiring the county treasurer to pay, out of the *first* moneys collected on taxes, the State tax in gold and silver coin; and so far as concerns this case, we may treat all the taxes assessed as State taxes. These provisions most clearly require such taxes to come into the county treasuries in coin only; since out of the first of that money, and in the *same kind* as received, the county treasurers must pay gold and silver coin to the State treasurer.

On the 21st of October, 1864, and since October 19th, 1860, the county treasurers had been the collectors of taxes in each year, until the 1st day of January, succeeding each assessment.

Apart from the clause in first section of the act of 1864, now questioned, we hold that the law of the land clearly provided that the State tax at least should be paid in gold and silver coin.

This fully decides the case here as in the court below.

Upon the hearing in this court no counsel appeared for the respondent, and we have thus far in our decision discussed the questions raised by counsel for appellants.

The positions we take are these:

That Congress has no legal or constitutional power or authority to interfere with State taxes, either in amount, assessment, collection, or means of payment. That Congress did not attempt so to do in the passage of the legal tender act of 1861. That the act of Congress making treasury

notes a legal tender is limited in its applicability and compass.

That the statutes of the State of Oregon provide for the payment of its taxes in coin.

Though not particularly mentioned in the argument of the case or in the consultations of the justices, I deem it proper to present here that view which I take of the question and which I think would have saved the full discussion of the question of what is and what is not contained in our statutes. Without discussion I will state the reasoning.

It is conceded that the act, making treasury notes a legal tender, is one of limited application. The rule for the construction of such statutes is this: It must be confined to the subjects to which it is clearly and expressly applicable. It did not expressly or in any way include State taxes; being silent upon that subject. It then did not change the existing laws, customs and regulations concerning such taxes. The money so created could not then discharge State taxes, until the State legislature, exercising a proper power, should by enactment make it applicable and sufficient therefor.

It certainly follows that even in the absence of any State law requiring the payment of taxes in coin, they could not be satisfied by the offer of legal tender notes; for the way in which they had previously been paid was not changed by the act of Congress, or intended to be interfered with.

The Judgment is affirmed.