## BANK OF OXFORD *v.* TOWN OF OXFORD.

1. BANK. *Privilege tax. Act of* 1888. *Exemption from taxation.*

     Under the revenue act of 1888 (Laws, p. 16) a bank that failed to pay a *sufficient* privilege tax, measured by its capital stock and assets, was not entitled to exemption from other taxes—state, county and municipal. *Vicksburg Bank* v. *Worrell,* 67 Miss., 47.

2. TAXATION OF BANKS. *Code* 1880, § 498. *Repeal. Acts of* 1886 *and* 1888.

     Neither the revenue act of 1886 (Laws, p. 12), imposing a privilege tax on banks, nor the revenue act of 1888 (Laws, p. 16), providing that payment of the privilege tax therein imposed should exempt from all other taxes, abrogated § 498, code 1880, which provided for taxing, at its market value, the capital stock of banks. Said section remained in full force, inoperative if the act of 1888 was complied with, but operative if it was not.

3. BANK. *Taxation. Payment of insufficient privilege. Code* 1880, § 498.

Accordingly, where a bank failed to pay a sufficient privilege tax under the said act of 1888, its capital stock remained liable to taxation as provided by § 498, code 1880.

4. BANKING CORPORATION. *Taxation of shares. Code* 1880, § 498.

Under § 498, code 1880, and all former codes in this state, the property and assets of banks and other joint-stock companies are not taxable as those of individuals. They are not required to report to the assessor indebtedness due them, money on hand or on deposit, or other assets, but only the value of the shares of capital stock paid in. Thus, through the corporation as a medium, such shares are taxed, and an individual shareholder is not required to give in his shares of stock for separate taxation.

5. TAXATION OF CAPITAL STOCK. *Non-taxable securities. No deduction therefor.*

Shares of the capital stock in a bank are taxed through the bank, regardless of how the capital is invested. Hence, a bank in reporting its capital stock for taxation must give it in at its market value, and cannot deduct therefrom the amount of its capital or assets invested in non-taxable securities.

6. PRIVILEGE TAX. *Failure to pay. Relief against. Act of* 1892.

Where a bank did not pay sufficient privilege tax under the act of 1888, its consequent failure to secure exemption from all other taxes cannot be relieved against by availing of the act of 1892 (Laws, p. 31), granting relief on certain terms to those delinquent as to privilege taxes. The latter act relates only to the enforceability of contracts made by such delinquents.

FROM the chancery court of Lafayette county.

HON. W. R. TRIGG, Chancellor, presided by interchange.

Appellant, Bank of Oxford, filed this bill May 15, 1890, to enjoin an action at law which had been instituted against it by the town of Oxford for the collection of unpaid municipal taxes for the years 1888 and 1889.

The bill alleged that the bank had paid for each of those years a privilege tax of $750; that this was the proper tax, since its capital stock was $79,000, and its surplus $4,000—in all $83,000—while $10,000 of this was invested in non-taxable state bonds; that the basis for the estimation of its privilege tax was thus reduced to $73,000; that afterwards,

a doubt having arisen as to the construction of the statute, the bank, as a matter of precaution, and for the purpose of placing the question of the amount to be paid beyond any doubt, tendered to the sheriff an additional sum of $250, and interest thereon, for each of said years, which the sheriff refused to accept. This additional sum complainant still tenders in its bill. -

The town answered, denying the sufficiency of the privilege taxes so paid, and denying that the bank had the right to deduct the $10,000 invested in non-taxable bonds in computing the basis of the privilege taxes so paid. The answer avered that during the years in question the assets of the bank ranged from $175,000 to $225,000, and that it should have paid the privilege tax for each year as a bank having that amount of assets. The answer was made a cross-bill, and prayed for an accounting as to the value of the capital stock and the assets for each year, and that whichever be found the larger be adopted as the basis on which to estimate the privilege taxes chargeable against the bank. The cross-bill further alleged that as the bank had paid an insufficient privilege tax, it had failed to secure the exemption from all other taxation—state, county and municipal—provided for by the revenue act of 1888 (Laws, p. 16); and therefore the cross-bill prayed for a decree for the amount of the *ad valorem* municipal taxes.

The bank answered the cross-bill, repeating its original averments, and denying that its assets amounted to any such sum as that alleged in the cross-bill, alleging that the loans and discounts made by it were largely made up of moneys due depositors; that prior to 1888 it had invested $6,682 of its capital stock in real estate, which had been assessed, and on which it had paid *ad valorem* taxes for the years in question; that the basis upon which it had paid privilege taxes was found by adding to the whole capital the reserve fund, and then deducting the non-taxable bonds and real estate.

From the undisputed testimony it appeared that for 1888

all the resources of the bank, including loans and discounts, real estate, cash on hand etc., aggregated $207,559.92; that as against these resources the capital stock amounted to $79,-000, the undivided profits to $4,043.32, the amount due depositors $124,516.60. The totals for the year 1889 varied very slightly from those of 1888. It was further shown that the municipal taxes for 1888 were ten mills, and for 1889 fourteen mills, on the dollar.

At the May term, 1892, the case being ready for hearing, complainant asked leave to file an amended bill, setting up the act of March 7, 1892 (Laws, p. 31), granting relief from penalties incurred by failure to pay privilege taxes. This act provides that any person or corporation liable to a privilege tax, and having failed in whole or part to pay the same, might, within sixty days after the passage of the act, pay the true amount or the balance remaining unpaid, with twenty-five per cent. additional; that persons or corporations making such payments shall " be relieved from all the pains and penalties imposed by § 589 of said code 1880, or any law of like import in respect of the effects of such non-payment of such privilege tax on contracts made by such persons or corporations; and all contracts made by such persons or corporations as shall avail themselves of the benefits of this act shall be enforceable in all the courts, the same as if such privilege taxes had been paid when the same were required by law to be paid." Complainant, by its proposed amended bill, sought to show compliance with said act, and to avail of its provisions as granting relief against the demands asserted by the town. The court refused to allow the amended bill to be filed.

On final hearing, the court held that the bank had failed to pay sufficient privilege taxes for the years 1888 and 1889, and that it was, therefore, liable to pay the municipal taxes *ad valorem*, and directed an account to be taken of the gross assets held by the bank on the first of February in each of said years, less the non-taxable securities and the deposits,

on which basis ten mills for 1888 and fourteen mills for 1889 should be calculated; that the sum so ascertained should be credited with the amount of municipal taxes paid on the real estate for said years, and the balance thus ascertained, with six per cent. interest thereon, should be reported as the amount for which a decree would be rendered. The town objected to so much of the decree as authorized the deduction of deposits from the gross assets. The amount thus found to be due, and for which a personal decree was rendered in favor of the municipality, was $2,208.54, which sum included the attorney's fee consequent upon the dissolution of the injunction. The bank prayed an appeal from this decree, and the town prosecutes a cross-appeal, alleging error in the order of the court directing the gross assets of the bank to be credited with the amount of its deposits.

*H. A. Barr* and *Howry & Falkner*,

Filed separate briefs, citing in the main the same authorities, and making the following points:

Independently of the tender of $250, with interest thereon, the bank was not in default as to the tax of 1888. And the tender of $250, and interest thereon, saved it from default as to the tax of 1889. Besides, the bank had the right to avail of the "condonation act" of 1892. The amended bill as to this was presented at the earliest possible time. The refusal to allow it to be filed was error. *Jeffries* v. *Jeffries*, 66 Miss., 216; Code 1880, § 1881.

The remark in *Vicksburg Bank* v. *Worrell*, 67 Miss., 47, that a bank failing to pay a sufficient privilege tax under the act of 1888 did not secure the exemption, is an *obiter dictum.* The true construction of the act is that such a bank is liable for what it failed to pay, especially where the failure to pay is a mistake. There is nothing in the act which looks to a forfeiture of exemptions.

It is a general rule that when the public is to be charged with a burden, the intention to do so must clearly appear.

Cooley on Tax., 266–269; 2 Story, 369; 62 Wis., 32. For-feitures are never presumed.

The deposits were properly excluded from the taxable assets. *Horne* v. *Green*, 52 Miss., 452. Duplicate taxation is inadmissible under our constitution, which requires equality and uniformity. Cooley on Tax., 225. Deposits constitute indebtedness of a bank. Debts are not property. *Murray* v. *Charleston*, 96 U. S., 432. See also 59 N. H., 288; 59 *Ib.*, 621; 47 Am. Rep., 202.

Non-taxable state bonds were properly excluded from the taxable assets. Cooley on Tax., 80, 81. *Murray* v. *Charleston*, *supra*.

The act of 1888, in making the stock and assets the basis of taxation, in effect taxes them. It does not matter whether the person or thing be considered as taxed, it is the property that is the criterion. The tax is in respect to the property and to value. *Bank Tax Case*, 2 Wall., 200; 2 Black, 620. The tax here is a privilege tax only in name. In reality it is a tax on the assets, and the non-taxable securities cannot be included. *Welton* v. *Missouri*, 91 U. S., 275; *Brown* v. *Mary-land*, 12 Wheat., 425.

*Edward Mayes*, for appellee.

If either the capital stock or the assets of the bank ex-ceeded $75,000, the privilege tax paid by it was insufficient under the act of 1888. This must be conceded, unless the value of the state bonds or the real estate can be subtracted. Neither subtraction is allowable.

A privilege tax imposed, as in this case, in the nature of a commutation, is not a tax on property, but on the franchise, and is measurable by elements which would not be of them-selves taxable. For the distinction between a tax on a busi-ness or a privilege and a tax on capital or property, and the right to tax the business regardless of how its funds are in-vested, see *People* v. *Tax Commissioners*, 2 Black, 620; *Soci-ety* v. *Coite*, 6 Wall., 594; *Provident Institution* v. *Massachu-*

setts, *Ib.*, 611; 9 Wheat., 859. That the tax in question is a franchise tax, see *Temple* v. *Sumner*, 51 Miss., 13; *Carter* v. *State*, 60 *Ib.*, 456; *Folkes* v. *State*, 63 *Ib.*, 81; *Harness* v. *Williams*, 64 *Ib.*, 600; *Vicksburg Bank* v. *Worrell*, 67 *Ib.*, 47.

It is immaterial that the assets adopted as a measure of the privilege tax include non-taxable funds or securities. 32 Conn., 173, s.c. 6 Wall., 594; *Ib.*, 611; Burroughs on Taxation, 174. See also *Bank Tax Case*, 2 Wall., 200; *Holly Springs Savings Co.* v. *Marshall County*, 52 Miss., 281.

Having failed to pay a sufficient privilege tax, the bank failed to secure exemption from other taxes. *Vicksburg Bank* v. *Worrell, supra.* The decision in that case is right in law and in morals.

Even if deposits are not to be taxed *ad valorem*, they are part of the bank's assets, and to be computed in determining the amount of its privilege tax. But I contend deposits cannot be deducted, even in *ad valorem* taxation.

As to the subsequent tender, it is sufficient to say it was no compliance to offer to make up the requisite amount years after it was payable, and after the bank's delinquency has been made manifest.

The decree should be reversed on cross-appeal. The consequence of failure to pay a sufficient privilege tax was liability to *ad valorem* taxes as usual. Appellee's taxable assets could not be reduced by the sum of its deposits. These are the property of the bank, and taxable as such. Cooley on Tax., 388; 5 Wall., 663; 10 *Ib.*, 152; *Society* v. *Coite, supra*; 109 U. S., 398; 105 *Ib.*, 305; *Yazoo, etc., Railroad Co.* v. *Thomas*, 65 Miss., 553. Individuals are not allowed to deduct what they owe. To allow banks to deduct its debts from its solvent credits would be unjust discrimination. Code 1880, §§ 479, 481, 497; 100 U. S., 533; *Dailey* v. *Swope*, 47 Miss., 367; *Mississippi Mills* v. *Cook*, 56 *Ib.*, 40; 88 Ill., 340; 5 Ark., 204; 89 N. C., 291; 42 Wis., 502, 527; 44 Ill., 229; 101 U. S., 153. There is no question of forfeiture involved. To tax deposits is not duplicate taxation. The depositor

pays on it as a debt due him by the bank, and the bank pays on the debts due to it.

The "condonation act" of 1892 could not be availed of by the bank. It only purported to relieve against the penalty denounced by § 589, code 1880.

*A. H. Whitfield,* on the same side.

Argued orally by *Edward Mayes,* for appellee.

Campbell, C. J., delivered the opinion of the court.

In *Vicksburg. Bank* v. *Worrell,* 67 Miss., 47, we held that the act approved March 8, 1888, amending § 585 of the code of 1880, as to banks, was constitutional, and that its purpose was to impose a tax, measured by the entire assets of the bank, in lieu of all other taxes, and that a bank which paid according to the requirements of that act thereby secured the immunity from other taxation which it declares. We added: "Any bank which did not estimate all of its assets, beyond the amount of its capital stock, and pay the privilege tax on the larger basis, is in default, and did not secure the exemption from taxation declared by the law in favor of those which conformed to its terms." This is the expression of the plain implication of the declaration immediately preceding, viz.: That such as complied with the law secured its benefits. The obvious suggestion, the irresistible inference, from this is that such as did not pay according to the law did not secure its benefits, and, instead of leaving it to inference, this was plainly declared; and now we are met by the assertion that this utterance is *obiter.* This we deny, and adhere to it as a pertinent and correct declaration of the court in dealing with the matter before it. We hold now, as we said then, that any bank not having paid as provided by the law did not secure its benefits. That was as far as it was proper for us to go then. The question before us now is, what taxation was a bank

subject to, if it did not pay in accordance with the act of 1888? We answer that § 498 of the code of 1880 governs in such case. It was never repealed. By the act, entitled "*An act to amend* §§ 557 *and* 585, *code of* 1880," etc., approved March 18, 1886 (Laws, p. 12 *et seq.*), the privilege tax imposed by the code of 1880 was materially changed; but § 498 of the code, which provides for taxing the capital stock paid in at its market value, was not affected by it. That remained in full force, unaffected by the requirement of a privilege tax

The act of March 8, 1888, already spoken of, took the place of the act of March 18, 1886. It greatly increased the privilege taxes on banks, and declared their payment to be in lieu of all other taxes upon banks; but it did not abrogate § 498 of the code. That remained in full force—inoperative if the act of 1888 was complied with, but operative if it was not.

The proposition that the assets of banks were taxable as those of individuals, is not maintainable. Section 498 of the code of 1880, copied from the code of 1871, § 1683, which was transferred from the code of 1857, p. 77, art. 24, which was taken from the act of March 5, 1846, Hutch. code, p. 196, furnishes the rule for the taxation of bank stock.

Section 468 of the code of 1880 declares what property shall be exempt from taxation, and succeeding sections provide for obtaining lists of taxable property and placing them on the assessment rolls, but the capital stock of banks and other joint-stock companies is excepted from the operation of the provisions applicable to property, generally, by the special provision contained in § 498, which looks to the company as the medium through which to impose a tax according to value on the capital stock paid in. In this way it is sought to tax, at its value, the personal property, consisting of shares of capital stock. Nominally, the tax is on the company, but, really, it is upon the share-holders who own the capital stock, who bear whatever burden is imposed on the company, which is the aggregation of all who own its capital.

The foregoing proceeds on the assumption that the bank of Oxford did not comply with the act of March 8, 1888, and secure immunity from other taxation; and this is true, for, while the assets of the bank considerably exceeded $75,000, it paid the tax prescribed for banks whose assets did not exceed that sum. Its claim is that it had $10,000 of its assets invested in non-taxable bonds, and, deducting this sum, its assets were reduced to $75,000. This position is not tenable. If every dollar of its capital stock and assets was invested in United States bonds, or other non-taxable securities, the liability to taxation would not be lessened, or in any way affected. The securities are not taxable, and are not taxed. The value of the shares of capital stock paid in is taxed. They are property, and taxable as such, no matter in what the assets of the company may be invested. An individual is taxable on what is due him. He is required to report to the assessor the amount of indebtedness to him in various forms of indebtedness, as well as money on hand or on deposit, that he may be taxed on these things. A bank is not required to do this. It may have many times its capital employed in discounts and loans, and receive interest on this enlarged basis, and it is not required, as an individual is, to pay taxes on this basis, but on the value of the shares of its capital. Why this is so, is not for judicial inquiry, but so the law is written, and has been in this state for about half a century, and it has been embodied in the constitution of 1890, permissively but suggestively to the legislature. § 181.

The notion that a bank may deduct the amount of non-taxable securities it may own, because an individual may, arises from misconception, and is completely dispelled by considering that the bank is not taxed as an individual, but in its representative character—that the owners of the bank, share-holders, are the burden-bearers of these taxes, and the bank is named and used as an instrumentality for reaching the property of share-holders in this form. Individuals are entitled to deduct from the sum of their claims such as are not taxable,

because the basis on which they are taxable is amount due them; but, as the bank (or its share-holders) is not taxable on the basis of what is due to it, but the capital is to be taxed at its value to the share-holders, no deduction is allowable for any thing held by it. Its capital stock (and the shares into which it may be divided) is one thing, and the form in which it may have invested it is quite a different thing. Its entire capital may be put in non-taxable indebtedness, and the shares of its capital stock may thereby be enhanced or diminished in value, but their character as property, and liability to taxation as such, is not in any manner affected by the investment of the capital of the bank. If a bank has added to its capital stock any sum, by whatever name, which augments the value of its stock, and puts that in non-taxable securities, that does not entitle it *to any deduction in taxation,* but the capital stock, at its increased value by reason of such accumulations, is the basis of taxation, the purpose of the law being to impose on holders of bank stock taxes according to value, as on other forms of property. The owner of bank stock is not required to give it in to the assessor. Another mode of reaching it is provided, and that is through the bank, whose officers are required to report it, and the bank is to pay it. In other words, the share-holder is to be taxed, and pay through the bank. This is the simple scheme provided by our law for the taxation of corporate property, which has long been in force, and prevails elsewhere, and has been approved by the supreme court of the United States, as applied to national banks. *National Bank* v. *Commonwealth,* 9 Wall., 353.

Section 3764 of the code of 1892, taken from "*An act to amend the revenue laws,*" approved February 24, 1890, expresses the true view of the law as it has existed in this state for many years on this subject. It differs from former laws in its enumeration of the factors in the value of stock, which, though included, were not expressly mentioned in former

enactments.    This was to prevent evasion, and secure a just admeasurement of value.

The refusal to permit the filing of the amended bill, offered to set up the act granting relief from penalties under § 589 of the code of 1880, approved March 7, 1892 (Laws, p. 31), was right, for that act has no sort of application to the subject of this controversy.    Its sole purpose was to give delinquents an opportunity to escape the consequence of delinquency as to the enforceability of their contracts.

The decree is correct as to its finding that the bank did not pay as required by the law of 1888, and did not secure exemption from other taxation; but it is erroneous in fixing the basis for the taxation of the bank.    If it was taxable as an individual, the deduction from its choses in action of its liabilities in the shape of deposits was inadmissible, and, on this ground, the decree is wrong in detail on the basis on which it was rendered; but, as shown, it is fundamentally wrong.

We reverse the interlocutory decree of November 27, 1891, and the final decree in the cause, and remand it for such further proceedings as may be proper in conformity to this opinion.    As this will require a settlement of the controversy on a view not before suggested in the cause, new pleadings and evidence may be necessary, the consideration of which matter we merely suggest without expressing any opinion.

*Reversed and remanded.*