Argued at Pendleton, October 30, 1929; reversed
January 14, 1930

V. F. LIVESAY *v.* H. H. DeARMOND ET AL.

(284 Pac. 166)

For appellants there was a brief and oral argument by *Mr. Ross Farnham.*

For respondent there was a brief over the name of *Messrs. Cunning & Brewster* with an oral argument by *Mr. M. A. Cunning.*

ROSSMAN, J. This suit tests the validity and application of 1929 Session Laws, chapter 182, which is as follows:

"The county court or board of county commissioners of any county may, at its discretion waive or reduce the penalty or interest, or both, imposed for the failure to pay taxes within the time provided by law, for any year or years prior to and including 1927, if in its opinion, such action would facilitate the collection of such taxes."

According to the complaint the plaintiff is a taxpayer in Deschutes county, who owns lands which lie both within and without the Central Oregon Irrigation district; he is also the owner of a bond issued by the Squaw Creek Irrigation district, which district is partially within Deschutes county. Of the defendants, two are landowners in and taxpayers of Deschutes county, a third is the sheriff and tax collector of that county, and a fourth is the county judge; the latter, together with the other two defendants, compose the county court of Deschutes county. The complaint recites that the three defendants last mentioned, in their official capacities, on the 5th of June, 1929, made an order directing the sheriff to cancel all interest and penalties on all taxes which had become delinquent prior to the year 1928 providing said taxes were paid on or before September 1, 1929. The pleading alleges that there is due to the county, and to both of the aforementioned irrigation districts, large sums of money for penalties and interest from delinquent taxes, and that the cancelation of these charges "will greatly increase the amount of tax plaintiff and others

similarly situated would have to pay.'' By way of a second cause of suit there is brought into the record the information that on the 5th day of June, 1929, the aforementioned three defendants, who compose the county court, issued an order directing the sheriff to accept payment of taxes on lands owned by the two defendants, Varco and Allen, whom the complaint described previously as landowners in Deschutes county, ''without the payment of interest and penalty and upon the payment to the sheriff of the taxes for county and state purposes, without the payment of taxes for any other purpose and without the payment of interest and penalty.'' The complaint then alleges that in obedience to the aforementioned order the sheriff, as tax collector, accepted payment of the Allen taxes ''without interest and penalty and without even the principal of school and irrigation district taxes.'' It is alleged that a portion of the land owned by Allen lies within the Central Oregon Irrigation district. Other allegations of the complaint we deem it unnecessary to review. The relief sought was a decree holding as naught the action of the county court and the tax receipts, issued upon the payment of the taxes under the aforementioned circumstances. Only the four defendants, who are the sheriff, county judge, and county commissioners, filed an answer. It admits that the county court, June 5, 1929, issued the order mentioned in the complaint; it alleges, however, that that body was persuaded to make the order because of its opinion that if the penalty and interest on the delinquent taxes were waived their collection would be facilitated. The answer describes the lands owned by the defendants, Varco and Allen, and recites the conditions of the unpaid taxes against both properties. Concerning the Varco taxes the allegation is

made "that it was then apparent that if payment in full of said taxes, together with the penalty and interest accruing thereon, were insisted upon, then said land would be forfeited to Deschutes county and be removed from the tax roll as a result of which said delinquent taxes, including penalty and interest thereon, would be a total loss." The Allen property, which lies not only within Deschutes county but also within the Central Oregon Irrigation district, was encumbered with delinquent taxes assessed for state, county and irrigation district purposes. Concerning these delinquent taxes the averment is made that they, together with the penalties and interest, "equalled or exceeded the actual market value of said land." The 1922 taxes against both properties were in the process of foreclosure when the county court made the order complained of. The answer recites at length the reason which persuaded the county court to issue the general order and the specific ones concerning the Varco and Allen properties. This reason was a belief that a cancelation of these charges would produce payment of the tax; that a failure to take such action would result in the properties being taken out of private ownership and their removal from the tax rolls for an indefinite period. Attached to the answer and made a part of it are copies of the orders issued by the county court June 5, 1929. Omitting the preamble the general order provides:

"Therefore, it is hereby ordered that all penalties and interest accrued on delinquent taxes in Deschutes county, Oregon, levied for the year 1927 and prior years by the levying board of Deschutes county, Oregon, except such as are now in process of foreclosure by the county be, and the same are hereby waived provided such taxes shall be paid on or before the first

day of September, 1929, and unless so paid the penalty and interest on all delinquent taxes paid after that date shall be paid.

"It is further ordered that the sheriff of this county be and he is hereby directed to accept the payment of such taxes without the penalty and interest, and to issue receipts in full therefor when offered by any taxpayer in the county owing such delinquent tax or taxes."

The order concerning the Varco and Allen properties, after reciting the condition of the taxes assessed against these properties, recites:

"Therefore, it is hereby ordered that upon the payment of the principal of all taxes heretofore levied upon said properties that the sheriff accept the same and issue receipts therefor in full."

To the answer the plaintiff interposed a demurrer on the ground that the facts stated were not sufficient to constitute a defense. The demurrer was sustained, the defendants declined to plead further, a decree was thereupon entered granting the relief prayed for, and the defendants have appealed.

It is first contended by the plaintiff that chapter 182 of 1929 Session Laws is violative of section 1, article IX, of our state constitution which provides: "* * * All taxes shall be levied and collected under general laws operating uniformly throughout the state." The plaintiff argues that under the authority granted by this act one county may waive all interest and penalties attached to delinquent taxes, another may reduce but not entirely cancel these charges, while a third may determine to enforce the entire obligation; he argues that legislation which permits such result does not contemplate the collection of taxes under laws operating uniformly throughout the state.

██ Disposing of this contention it is to be observed that this act does not confer any authority to waive or reduce a tax; the authority granted is confined to a waiver or a reduction of the penalty and interest imposed for failure to pay the tax. It seems desirable to notice the distinction between a tax and any sums exacted by law for the failure to promptly pay it. Such exactions are often termed interest, yet the reasons which support them are unlike those upon which interest charges are founded. In the absence of some unusual provision in the statute authorizing the levying of a tax it is generally held that a tax is not a debt: *Whitaker v. Haley,* 2 Or. 128; *Lane Co. v. Oregon,* 7 Wallace 710 (19 U. S. L. ed. 101); Cooley on Taxation, § 22, 26 R. C. L., Taxation, § 11. Therefore, an unpaid tax draws no interest unless legislation expressly directs a different result: *Stitt v. Stringham,* 55 Or. 89; Cooley on Taxation, § 1274. From *Colby v. City of Medford,* 85 Or. 485 (167 P. 487), we quote:

"* * * In passing, it may be noted that when interest is charged on a delinquent tax it is not regarded as interest in the sense that it is a consideration for the forbearance of money, but it is deemed to be a penalty; and when interest, so called, is charged, it is sustained on the theory that it is a means to insure prompt payment of the tax and it is not a part of the tax: *State v. Superior Court,* 93 Wash. 433 (161 P. 77)."

And from *State v. Coos County,* 115 Or. 300 (237 P. 678), we quote:

"We have heretofore held that the increased percentage and other burdens, prescribed by the legislature for nonpayment of taxes, are in the nature of penalties and are not part of the taxes: *Colby v. Medford,* 85 Or. 485, 527 (167 P. 467). They may have been prescribed as a means of inducing the taxpayers to pay promptly, but they are distinctive from the tax

itself. Taxes are a contribution prescribed by the statute and levied by the authorities for the support of the government; and, as stated in *State of Texas v. Galveston, etc.,* 100 Tex. 153 (97 S. W. 71), the penalties are somewhat in the nature of a fine upon a delinquent taxpayer for his delay in paying his taxes. They are not levied by the counties as part of the taxes, but are creatures of the statute, and what the statute has imposed, by way of penalty, the statute can remit.''

We shall pursue this matter no further for the respondent frankly concedes that the penalty and the interest ''are no part of the tax itself.'' Since these charges are punitive in nature, and are imposed to spur on the property owner to a prompt payment of the tax it would seem to follow that the constitutional requirement that ''all taxes shall be levied and collected under general laws operating uniformly throughout the state'' does not apply to these charges. It may be argued, however, that these exactions come within the spirit of the constitutional requirement, and that, therefore, its language should be liberally construed so as to include them. But, since these charges are imposed for punitive, as distinguished from revenue purposes, there would seem to be no greater occasion for subordinating statutes imposing them to constitutional provisions enjoining uniformity in taxation than subjecting any other penal statute to the same clause of our constitution. Constitutional requirements in regard to uniformity of taxation are restricted to measures which seek to raise revenue, and have no application to burdens imposed which are not, properly speaking, taxes: *King v. City of Portland,* 2 Or. 146; 37 Cyc., Taxation, p. 731.

From Cooley, Taxation, § 264, we quote:

''The provision requiring uniformity and equality of rate does not prevent the passage of a 'compromise

law' for the clearing up of arrearages, where delinquent taxes have accumulated beyond the ability of owners to pay or of the state to enforce.''

See to same effect *Beecher v. Webster Co.*, 50 Ia. 538; *Oxford Bank v. Oxford,* 70 Miss. 504 (12 So. 203), and *Pickering v. Ball,* 19 Wash. 185 (52 P. 1022). This principle was recently resorted to by this court in upholding the validity of chapter 314, 1925 Session Laws, which directed the remission by county courts of interest, penalties, and costs upon certain delinquent taxes: *State v. Coos County,* 115 Or. 300 (237 P. 678) ; see also *State ex rel. v. Marion County,* 117 Or. 426 (243 P. 558). The only important distinction between that statute and the present one, so far as the application of this constitutional provisioin is concerned, is that the present law makes the remission of these charges discretionary, while the 1925 act was mandatory. But the principle involved is the same. From *State v. Coos County,* we quote:

''We do not regard this however, as an act regulating taxation, but merely as an act remitting certain penalties, which would otherwise have accrued but for its passing. The act of taxation had already been performed when the tax was properly levied by the authorities in Coos county, and this did not authorize the levying of any taxes, or regulate the manner in which they should be paid, but was an act of grace remitting certain penalties, but for which, the parties named in the act would have been liable. Neither does it conflict with any provision requiring taxes to be equal and uniform. The taxes levied upon the property in Coos county and every other county were, so far as this proceeding is concerned, equal and uniform, and the clause in question did not render them less equal or less uniform.''

We, therefore, conclude that this act is not violative of article IX, section 1, of our constitution.

■ But, even if we grant that penalties and interest are a part of the tax, it seems clear that after this legislation has gone into effect all taxes will continue to be "levied and collected under general laws operating uniformly throughout the state" as provided by article IX, section 1, Oregon constitution. This act is not a local one; it is available to every county in the state. No county can repeal it, or suspend its operation. The act does not single out any class of individuals and make them its beneficiaries. Even in counties, where the local board does not elect to reduce or waive interest and penalty charges, the act is in effect nevertheless. The North Dakota court in *Picton v. County of Cass,* 13 N. D. 242 (100 N. W. 711, 3 Ann. Cas. 345), considered at length a statute, whose operation was intrusted to the discretion of the board of county commissioners and whose effect was not substantially dissimilar from the act before us; in upholding its validity the court reasoned thus:

"* * * It is argued that the act is operative only in those counties which adopt the resolution referred to in section 1, and from this assumption the conclusion is drawn that it is a local, and not a uniform, law. The error lies in the assumption. If it were true that the act is in force only in those counties which pass the resolution, and in no others, the argument would have great weight. But as we have already seen, the act by the legislative will is made applicable to every county in the state. It does not apply to a single county, or to certain enumerated counties, or to counties belonging to an arbitrary class, but to every county in the state, regardless of whether they do or do not pass the resolution referred to in section 1. The remedy which it gives for the collection of taxes upon the lands described in the act is given to each county in the state; may be set in motion by the same local authorities, namely, the board of county commis-

sioners; the steps necessary to apply the remedy are the same; and the act declares the same consequences, in whatever county proceedings are taken under it. The resolution of the board does not adopt the act for that county, nor render it applicable. It is in force, applicable, and available before the resolution is passed. The resolution is passed by the board under the law, and by virtue of it, in the exercise of an administrative discretion, and merely constitutes the first step in the enforcement of the remedy therein provided.''

█ We come now to the contentions advanced by the plaintiff that the act was incomplete when it left the legislature, and that it contemplates that the county commissioners shall exercise legislative powers. If the law is subject to either of these objections we must disregard it and hold it ineffective because of its conflict with the constitution of our state which contemplates that legislative powers shall be exercised only by the legislative assembly. These contentions of the plaintiff are based upon the fact that this law invests the county board with discretion whether interest and penalty charges shall be waived, and at what times the property owner must pay his delinquent charges in order to obtain the benefit of the remitted penalties. The mere fact that a subordinate body is granted discretion in the exercise of power conferred by a law does not necessarily demonstrate that the discretion amounts to the use of a legislative power. Any power, other than a legislative one which the legislature may exercise, it may delegate: *Wayman v. Southard*, 10 Wheat. 1, 6 L. ed. 253. From this fact it necessarily follows that before a statute can be condemned as conferring legislative power upon an administrative body it must be evident that the power conferred is legislative. Hence, at this point it is desirable to recog-

nize the distinction between the delegation of power to make law or complete an incomplete act, and the conferring of authority upon a commission or official to administer a law in a manner that involves the exercise of administrative discretion. Since the power to make a law includes discretion as to what it shall be this power can never be delegated, but the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as non-legislative, authority conferred upon commission and boards, to determine the facts or state of things upon which the law intends to make its action depend. We quote from *Minneapolis, etc., R. Co. v. Wisconsin R.* Com., 136 Wis. 146 (116 Wis. 905, 17 L. R. A. N. S. 821), as follows: ''In the process of enacting a law there is frequently necessary the preliminary determination of a fact or group of facts by the legislature; and it is well settled that the legislature may declare the general rule of law to be in force and take effect upon the subsequent establishment of the facts necessary to make it operative or to call for its application.'' Thus in *Stettler v. O'Hara,* 69 Or. 519 (139 P. 743), an act of the legislature authorizing the industrial welfare commission to fix the minimum wages and maximum hours of labor for women and minor workers was held not to constitute a delegation of legislative power to the commission. In *State v. Briggs,* 45 Or. 386 (77 P. 750, 78 P. 361), the validity of an act authorizing the appointment of a state barber board, with power to prescribe the qualifications of barbers, was upheld. We there stated that, ''the provision of the act under consideration, vesting authority in the board of examiners to prescribe the qualifications of a barber, is not a delegation of a legislative power. * * * It may delegate that power to a board or commission created

and authorized by it, which, in the exercise of the authority vested in it, acts on behalf of the state. * * * The prescribing of the proper qualifications of applicants for licenses by some agent of the state, learned in such profession or calling, is not legislation but rather the exercise of a mere administrative power. A law when it comes from the legislature must be complete, but there are many matters affecting its execution and relating to methods of procedure, which the legislature may properly delegate to some ministerial board or officer, and prescribe the qualifications of persons who shall be licensed to follow or engage in the practice of a given trade or profession is one of them." In *Portland Fish Co. v. Benson,* 56 Or. 147 (180 P. 122), and *State v. Gates,* 104 Or. 112 (206 P. 863), the validity of acts was recognized which authorized the board of fish commissioners to close streams for an indefinite period to be determined by them for the purpose of stocking the streams with fish. From I Cooley's Const. Lim., 8 ed., P. 228, we quote:

"The maxim that power conferred upon the legislature to make laws cannot be delegated to any other authority does not preclude the legislature from delegating any power not legislative which it may itself rightfully exercise. It may confer an authority in relation to the execution of a law which may involve discretion but such authority must be exercised under and in pursuance of the law. The legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative officer or body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply."

■ From *Minneapolis, etc., R. Co. v. Wisconsin R. Com.,* supra, we quote: "So, statutes declaring that

railroad rates and service shall be reasonable, and creating a commission with power to investigate existing rates and service, and to fix and determine what rates and what service are reasonable, the statute then providing that the rates and service so fixed shall be in force, have been generally upheld as a valid exercise of the legislative power." We deem it unnecessary to cite any additional cases to illustrate the established principle that a law to be complete need not command to be done everything for which it provides. As was said by Judge Marshall in *Slack v. M. & L. R. R. Co.,* 13 B. Mon. 1, "the legislative power to command a particular thing to be done includes the power to authorize it to be done." And from *Lock's Appeal,* 72 P. 491 (13 Am. Rep. 716), we take the following much quoted language:

"There are many things upon which wise and useful legislation must depend which can not be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislature * * * If the determining power can be conferred by law, there can be no law that is not absolute, unconditional, and peremptory; and nothing which is unknown, uncertain, and contingent can be the subject of law."

■ In the present instance it is apparent that the legislature believed that there were some counties in which the economic conditions were such that to exact of the property owner full payment of punitive charges upon his delinquent taxes would be unjust, and would render it impossible for him to retain his property. It is also evident that the legislature believed that the local boards were in a better position to know in what counties these adverse conditions prevailed than was the legislature, which holds a 40-day session once in two

years. Hence, rather than undertake to determine these specific counties and name them in the act, the legislature made it the duty of each local board to determine whether in its county the conditions were such that a waiver or reduction of penalties and interest would facilitate the collection of taxes. The general purpose was to induce the property owner to pay his taxes, to reduce delinquencies, and enable the property owner to retain his property. It is evident that if this law should develop into wise and useful legislation some one must make the above mentioned investigation. The legislature did not see fit to make it, but assigned that duty to the local boards; hence, the question before us resolves itself into this: does such an investigation involve the exercise of law making power; is it tantamount to the writing of legislation, or the repeal of any existing law upon the subject of delinquent taxes and the foreclosure of delinquent tax certificates. We believe that the principles previously reviewed demand that these questions should be answered in the negative, and in support of our conclusion refer especially to the well reasoned decision in *Picton v. County of Cass,* 13 N. D. 242 (100 N. W. 711, 3 Ann. Cas. 345). The legislative act there before the court dealt with delinquent taxes, and while it is true that it was dissimilar from that before us nevertheless it sought to accomplish the same result attempted by our act, and the discretionary power it yielded to the county boards presented to the North Dakota court substantially the same problem we must solve. We quote from the court's reasoning in upholding the validity of the statute the following:

"In other words, the discretionary power which section 1 confers upon the several boards is not the

legislative discretion of determining the policy and expediency of the law, and deciding whether or not it shall be the law, for, as we have seen, that discretion was fully exercised by the legislature, but is an administrative discretion committed to them, as the fiscal agents of the county, to determine whether and when the machinery for the collection of real estate taxes provided by this act shall be set in motion. It confers the power upon all counties of the state alike to invoke the remedies therein provided. They may or may not avail themselves of the provisions, according to their discretion. The fact that it merely authorizes the proceedings, and does not command them to be taken, furnishes no legal objection to the validity of the law. All legislative acts are divided into two classes: First, those which imperatively command or prohibit the performance of acts; and, second, those which only authorize or permit acts to be done. The former may be classed as mandatory, and the latter as permissive. the latter class of laws are set in motion, not by command of the legislature, but by the exercise of a discretion outside of the legislature.''

The North Dakota court cites *Woodrough v. Douglas,* 71 N. D. 354 (98 N. W. 1090), as an authority upholding the validity of a similar statute. To this precedent there may be added *Baker v. Atchison Co.,* 67 Kan. 527 (73 P. 70). In *Trust Co. v. Davis,* 76 Kan. 639 (92 P. 707), the validity of the Kansas delinquent tax compromise act was affirmed so far as it applied to taxes levied after the passage of the act; *Ide, Receiver v. Finneran,* 29 Kan. 569, had affirmed it as to taxes which accrued prior to the enactment of the compromise act.

We construe our act to mean that the legislature grants authority to the county boards to waive or reduce penalties and interest upon the delinquent taxes, mentioned in the act, whenever the board finds

that such action would facilitate the payment of taxes. It follows, from what we have said above, that in our opinion the legislative power had completed its course when it wrote the above principle into our statute books, and that the discretion necessary in determining whether conditions warranted a waiver or reduction of these punitive charges, and in fixing a time within which the property owner must pay his delinquent taxes so as to obtain the benefit of any remissions, was an executive, as distinguished from a legislative, function.

■ It is evident, from what we have said above, that in our opinion this act does not authorize county boards to remit these charges for one property owner and withhold such action from another. We believe that the act contemplates general orders applicable to the entire county. We notice, however, that in the North Dakota, Nebraska and Kansas cases the statutes were upheld even though they authoried remissions in individual cases. While the matter is not free from doubt, we are of the opinion that the legislature was dealing with county problems as distinguished from the needs of the individual taxpayer.

■ While we are aware of the fact that the legislature has at times provided tha tthe penalties and interest accruing upon the portion of the tax due to an irrigation district shall be paid to the district, we believe that this circumstance does not prevent the county board from waiving or reducing this portion of these charges as well as the remainder of the penalty and interest . What the legislature has imposed it may remit or authorize to be remitted: Cooley, Taxation, 4th ed., § 1821.

It follows from the foregoing that the circuit court erred when it sustained the demurrer to the answer. In so ruling we do not hold that the county board had any authority to waive taxes due to the irrigation districts; the allegations of the plaintiff are not in harmony with the recitals of the orders made by the county board, alleged in the answer and from which we have quoted.                                                    REVERSED.