GEEBRICK <em>v.</em> THE STATE OF IOWA.

|     |     |
| --- | --- |
| 5   | 491 |
| 94  | 10  |
| J94 | 24  |
| 5   | 491 |
| 137 | 478 |

The legislative power of the State of Iowa, is vested in the general assembly, and can be exercised by that body alone.

A law can no more be repealed, than it can be made, by a vote of the people.

The word "operation," as used in the sixth section of the first article of the constitution of the state of Iowa, which provides that all acts

of a general nature, shall have a uniform operation, means the practical working and effect of a law. WRIGHT, C. J. *dissenting.*

The provisions of the act entitled "an act to license and regulate the sale of malt, spiritous and vinous liquors," approved January 29, 1857, which provide that the question of licensing the sale of spiritous liquors, shall be submitted to the vote of the qualified electors of all the counties of the state, are not a sufficient compliance with section six of the first article of the constitution of the state.

The act licensing and regulating the sale of malt, spiritous and vinous liquors, approved January 29, 1857, is not so framed, that a portion of it, liable to constitutional objection, can be adjudged invalid, and the remainder of the act be permitted to stand.

The act entitled "an act to license and regulate the sale of malt, spiritous and vinous liquors," approved January 29, 1857, is unconstitutional and void.

*Appeal from the Des Moines District Court.*

MONDAY, JANUARY 25, 1858.

Indictment for selling intoxicating liquors, without having obtained a license, in accordance with the act entitled "an act to license and regulate the sale of malt, spirituous and vinous liquors, in the state of Iowa," approved January 29, 1857. A demurrer to the indictment was overruled, and defendant having pleaded not guilty, and submitted his cause to the court, was found guilty, and adjudged to pay a fine of fifty dollars and costs of suit. Defendant appeals.

*C. Ben Darwin,* for the appellant.

*Samuel A. Rice,* Att'y General, for the State.

STOCKTON, J.*–The question made upon the demurrer to the indictment, is whether the facts alleged constitute a public offence. The defendant is charged with vending and retailing spirituous liquors and intoxicating drinks, without having first complied with the conditions and obtained license, as required by the first section of the act

---

*WRIGHT, C. J. dissenting.

entitled " an act to license and regulate the sale of malt, spirituous and vinous liquors in the state of Iowa," approved January 29, 1857.

This act authorizes the county judge of any county, to issue a license to any person, making application according to its provisions, for the sale of malt, spirituous and vinous liquors; and provides for the punishment of any person selling without a license. By the seventeenth and eighteenth sections, it is provided, that the act entitled "an act for the suppression of intemperance," approved January 22, 1855, is not repealed in any county of the state, unless the people of such county shall, by vote taken upon the question of licensing the sale of spirituous or vinous liquors, adopt the said act of January 29, 1857; and if a majority of the legal voters in any county, shall vote in favor of the act, then the county judge shall proceed to issue license, as by the said act is provided.

It is not averred in the indictment, nor does it in any manner appear in the pleadings or evidence, that the act of January 29, 1857, (the license law), has been adopted by a majority of the legal voters of Des Moines county; nor that the question of adopting the same, has ever been submitted in said county to a vote of the people. No question is, however, made in the argument, upon the fact, that it is not averred or shown by the record that the act had been adopted. The constitutionality of the act, is the only question argued before us, and the only one we are called upon to decide.

In *Santo* v. *The State*, 2 Iowa, 203, it was held, that the eighteenth section of the act for the suppression of intemperance, approved January 22, 1855, which provided for submitting to the people of the state, the question of prohibiting the sale of intoxicating liquors, was not a submission in its largest and broadest sense of the question, whether the act aforesaid should become a law; that such a submission would have been unconstitutional and void; that " the general assembly cannot legally submit to the people, the proposition whether an act shall become a law

Geebrick v. The State of Iowa.

or not; and that the people have no power in their prima-
ry or individual capacity, to make laws. They must do this
by their representatives."

This decision is in conformity with that of *Rice* v. *Foster*,
4 Harrington, 492, in which it is said: "The legislature
is invested with no power to pass an act which is not a law
in itself, when passed, and has no authority as such, and is
not to become or be a law, until it shall have been created
and established by the will and act of some other persons
or body, by whose will, also, existing laws are to be re-
pealed or altered and supplied.

To the same purport is the decision in *Thorne* v. *Kra-
mer*, 15 Barbour, 112. The constitution of the state of
New York, provided that "the legislative power of the
state should be vested in a Senate and Assembly." The
court say: "The law making power being thus intrusted
to the Senate and Assembly, by the constitution, it can-
not, according to any fair construction of that instrument,
be also lodged with, or transferred to, any other body.
The members of the Senate and Assembly are elected by
their constituents for the important duty of making laws.
It is to be presumed they are chosen for their wisdom, in-
tegrity, experience and fitness. Upon what principle,
then, can the representatives transfer to any other person
or persons, the power of making, or what is tantamount,
the power of breathing life and efficacy into laws." See
also *Parker* v. *Commonwealth*, 6 Barr, 507; *Bradley* v.
*Baxter*, 15 Barbour, 122.

The position seems to us too clear to admit of any
doubt, that if the act of January 29, 1857, receives its
vitality and force from a vote of the people, such vote is
an exercise of legislative power, and the law is unconsti-
tutional and void. The legislative power is vested in the
General Assembly, and can be exercised by that body
alone. It is to be observed, that the question of the
adoption of the act, is not submitted to a vote of the
people of the whole state, and is only to be voted upon
by the people of any county, upon the order and direction

of the county judge, on the petition of one hundred of the legal voters of the county. Two effects are given to a vote in its favor: 1. If the act is adopted by a majority of the legal voters of any county, then the "act for the suppression of intemperance," approved January 22, 1855, is repealed in such county. 2. The county judge is to issue licenses for the sale of malt, spirituous and vinous liquors, to any one making the necessary application.

Under the "act for the suppression of intemperance," approved January 22, 1855, the rule of law was total prohibition of the manufacture or sale of intoxicating liquors. This had become the established policy of the state; the prohibitory law had received the sanction of each department of the state government, legislative, executive and judicial. If any other endorsement was requisite, it was not wanting, when it received, at the hands of the people of the state, by their vote in its favor at the April election, 1855, the emphatic impress of their approval. The act of January 29, 1857, undertakes to change this rule of law, and to inaugurate a different policy. It attempts to abrogate the uniform operation, and consequently, the force and validity, of a law general in its nature, and intended to secure the entire prohibition of the sale of intoxicating liquors in the state, and to provide for licensing the sale thereof, in any county of the state desiring the change, not by virtue of an act of the legislature passed into a law, according to the form of the constitution, but by the vote of a majority of the people of such county expressed at the polls.

We cannot be mistaken in interpreting this act, and the proceedings authorized by it, to be in effect, the repeal of one law, and the enactment of another, by a vote of the people. The question does not differ essentially, from that decided in *Rice* v. *Foster*, *supra*, in which it is held that a reference to the decision of the people at the polls, of the question whether license shall be granted or not, and according to their decision in any county, continuing or repealing therein the former law, and substituting the

new one in its place, is a plain surrender to the people, of the law making power. A law can no more be repealed, than it can be made, by the vote of the people, and the fact of a majority of the votes being cast in favor of license, can have no more effect in repealing the prohibitory liquor law, than it can have in authorizing the county judge to issue license. It is true that the vote, authorized under the act of 1857, is not to be taken directly upon the question, whether the act shall, or shall not, become a law. It is to be taken, however, upon a question, the adoption of which, by the people of a county, is to give all its force and operation to the law, whether for the repeal of the former prohibition, or for authorizing the issuing of license by the county judge. No rule of conduct in reference to the subject matter of the act, is established or changed by it, until it is adopted by the people of any county. It does not occur, as was held by the majority of the court, in *Santo* v. *The State*, under the act of January 22, 1855, that the law is to take effect and be in full force. Whatever may be the result of the vote, and even without such vote, it receives its vital force in this case, from something outside of the will of the legislature.

A further argument against the propriety or admissibility of submitting the question of license, under the act aforesaid, to a vote of the people of the different counties, arises under the sixth section of the bill of rights, which declares, that " all acts of a general nature shall have a uniform operation." Constitution, article 1. Recognizing as we do, the distinction between laws of a general nature and those of a special or local character, we understand by the " operation " of a law, is meant its practical working and effect. It is not, in our opinion, a sufficient compliance with the requisition of the constitution, that under the provisions of the act of the 29th of January, 1857, the question of licensing the sale of spirituous liquors, is to be submitted to the vote of the qualified electors of all the counties of the state. Something more is contemplated by the constitution, in the words " uniform opera-

tion." We must look further, and to the effect of such submission to the vote of the people, and to the consequences to result from the adoption of law. The prohibitory liquor law, is a law of a general nature, and its operation must be uniform throughout the state. Can we say that such is the case, if it remains in full force in one county, while it is repealed in others by a vote of the people, and a license law adopted in its stead? and is the act of 1857, if the effect of it is to bring about this want of uniformity in the operation of a law of a general nature, to be deemed constitutional and valid? We think not.

The vote authorized to be taken upon the adoption of the act, while it is objectionable in a constitutional point of view, as transferring the law-making power from the legislature to the people, is further objectionable in view of the possible, not to say the probable, result of such vote. We cannot undertake to determine, nor can it, under any circumstances, be foreseen, that the result of the vote will be uniform in all the counties of the state, either in favor of license or against it. In some of the counties, the vote may not be taken; in others, the majority may be against license; while in others, the majority may be in its favor. Unanimity of sentiment, either one way or the other, can hardly be reckoned upon. These views, we think, add weight to the argument against the constitutionality of submitting the act to a vote of the people. We do not, however, base wholly upon them our conclusion against the validity of the act in question, nor upon the fact that the result of the vote upon the question of adopting it, may not be uniform throughout the state. Upon this latter branch of the subject, the members of the court are not unanimous in opinion.

The majority of the court, however, are of opinion, that while the act must without doubt be deemed to be a law of a general nature, it is liable to objection, as prescribing no uniform rule of civil conduct to the people of the state, and as not providing of itself, for its uniform operation. The legislative power must command. It must not leave

to the people, the choice to obey, or not to obey, its requirements. It is not a law enacted according to the requirements of the constitution, if there is left to the action and choice of the people upon whom it is to operate, the determination of a question which may result in a want of uniformity in the operation of a law of a general nature.

The further inquiry is suggested, whether a distinction may not be drawn between such provisions of the act of 1857, as may be deemed in conflict with the constitution, and the remainder of the act; whereby its essential features may be maintained, and only so much thereof declared void, as shall be held repugnant to the constitution. We are referred, in this connection, to the opinion of the court in the case of *Santo* v. *The State, supra,* wherein it is suggested, that a statute may be void in part, and not necessarily void as to the whole; and that the courts should distinguish between a particular feature of an act, liable to constitutional objections, as providing for submitting to a vote of the people, the question of its becoming a law, and the body of the act, otherwise liable to no such objection, and which should be held to be in full force. This act is not, however, so framed, as that a portion of it, liable to constitutional objections, can be adjudged invalid, and the remainder of the act be permitted to stand. The matter relative to submitting to a vote of the people, the question of licensing the sale of liquors, is in such a sense, the very body and substance of the act, that if it is declared void, there is nothing to stand as the will of the legislature or the law of the land. It is in no manner declared by the act, that the prohibitory liquor law is repealed, and a license law adopted in its stead. This was the question to be voted upon, and decided by the people of each county. If the portion making provision for a vote by the people, is held to be void, nothing remains commanded by the legislature as a rule of civil conduct. We cannot undertake to say, that the prohibitory liquor law is repealed, and a license law adopted in its stead, according to the forms prescribed by the constitution.

It results from the foregoing considerations, that the act entitled "an act to license and regulate the sale of malt, spirituous and vinous liquors, in the state of Iowa," approved January 29, 1857, is unconstitutional and void. The defendant's demurrer to the indictment against him for selling liquors, without having first obtained a license, as required by such act, was improperly overruled, and the judgment of the district court will be reversed.

WRIGHT, C. J., *dissenting.*—The license law, approved January 29, 1857, in my opinion, is liable to the objection that it attempts to confer upon the people the power to repeal the act of January 22, 1855—a power which, under our form of goverment, must be exercised by the legislature, and can no more be delegated or given to the people, than can the power to make or declare the law. I am not prepared, however, to go so far as to hold, that this act violates the sixth section of article one of the constitution. This section is as follows: "All laws of a general nature, shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all."

By the "act for the suppression of intemperance," the sale and manufacture of intoxicating liquors, except as therein provided, are expressly prohibited. As is said in the opinion of the majority of the court, after the passage of that act, prohibition was the rule in this state. The act of January 29, 1857, however, gives to the county judges of all the counties in this state, the power to grant and issue license for the sale of malt, spirituous, and vinous liquors, to any person complying with the conditions in said act contained. And thus, by this act, the right to grant and issue licenses was recognized, and the rule of prohibition no longer obtained. The 17th and 18th sections provide, however, that, when petitioned, the county judge of any county shall order a vote to be taken, at any election therein, upon the question of licensing

the sale of spirituous or vinous liquors, as in said act provided, and if a majority of the legal voters in any county, shall vote in favor, then licenses shall issue under the restrictions, and upon the conditions, specified in said act. All acts and parts of acts in conflict with said act, are repealed, "provided that the act entitled an act for the suppression of intemperance, approved January 22, 1855, be not, and is not, by this act, repealed in any county of this state, unless the people of such county, by a vote taken as herein provided, shall adopt this act." Laws of 1857, 283.

It is objected that, under these provisions, the act of 1855, or of 1857, would not have a uniform operation, or that the law would be different in different counties, and that such legislation is prohibited by the article of the constitution above quoted. I do not think the objection tenable. And the difference of opinion between myself and the majority of the court, arises, as I believe, from difference of view as to the meaning and construction to be given to this article. They say: "by the uniform operation of a law, is meant its practical working and effect," whereas I look to the language of the law—take it by its four corners—and ascertain whether it gives to all the citizens of the state—all the counties and localities upon which it is to operate—a uniform rule; and if it does, then, in my opinion, it is not liable to the objection stated. If we are to look alone, or primarily, to the practical working and effect of a law, to determine whether, within the meaning of the constitution, it has a uniform operation, then, it occurs to me, that very many of our statutes would be liable to the objection made to the one under consideration—statutes, as to the validity of which, none of us entertain any doubt. But, according to my view, we are not thus to treat them. The legislature say to all the people of the state, this is the law for your government. Not to one county—to one person—or one locality—but to all localities and persons—this is the law. Under this law, if you pursue this course, a certain result should follow; if you pursue another course, then another result; but the

rule to guide and govern all, is alike uniform—the rule prescribed is uniform. Whether it shall have any practical effect and operation, or what such effect shall be, depends upon circumstances; and those circumstances are left under the control of all localities and persons alike, and for their action the same rule is given to all and to each.

I can, perhaps, best present my views, by briefly referring to some instances of legislation that would, and some that would not, in my opinion, violate this provision of the constitution. If the legislature had in this act, provided that in certain counties of this state, the county judges should determine whether a license should, or should not, issue; that in others, the question should be determined by a vote of the people; and that in others, again, prohibition should be the rule, I have no doubt but it would have been obnoxious to the objection here urged. In such a case, we would have had a law of a general nature, presenting a different rule, and contemplating and providing upon its face, for different proceedings in the several counties. Should the legislature provide that in some counties, twelve, and in others, six men, should constitute a jury for the trial of causes, we should have a law wanting in uniform operation. If we shall find a law which gave to certain persons particular privileges and immunities, and upon the same terms, should expressly deny them to other persons, we would have a case clearly prohibited by the positive language of this article. And I suggest, that in the concluding part of the article referred to, we have much to assist us in giving a construction to the first part.

Let me now direct attention to some instances of a different character. By the law of this state, cattle are free commoners. This is the law, as settled by the decisions of this court. By section 114 of the Code, the county judge of any county, may submit to a vote of the people, the question, whether stock shall be permitted to run at large, or at what time it shall be prohibited, and the con-

stitutionality of this provision, I believe, has never been doubted. Suppose the question should be submitted to all the counties, and one-half should decide, "stock at large," and the other half, "stock not at large," would we not, under the construction given to the constitution by a majority of the court, have a general law, the practical working and effect of which was not uniform? To this, I think, there can be but one answer. But it is said, that section 114, only refers to local matters, and that it is competent to thus legislate upon such subjects. In answer to this, I submit, that a regulation upon the subject of stock, is not more local than is the one upon the subject of the manufacture and sale of spirituous liquors. Indeed, it would seem to me, that there was quite as much propriety in leaving the one to be regulated at home, in the counties, as the other.

But I will proceed one step further. Suppose the legislature had, by this law, given full power and authority to the county judges to grant or refuse licenses, at their discretion, for the sale of spirituous liquors. Would not such a law have been uniform? And yet, some judges might have refused and others granted licenses, and thus the practical working and effect of the law would not have been uniform. Under such a law, we would possibly have had quite as much want of uniformity as we would have when the question is decided by the people. And yet, this want of uniformity, is not because the law was not uniform in its operation, but because, in the exercise of the discretion given by such uniform law, a different result is produced. If such a law is unconstitutional, then every statute which confers a discretion upon a class of officers, would be liable to the same objection; for this discretion, we know, though it is to be exercised and governed under and by legal rules, is liable to be differently exercised.

Once more, and finally, if by the uniform operation of a law, is meant its practical working and effect, I ask, how do we know that such working and effect will not be uni-

form, in this instance? If the people of every county in the state, should decide for license, then it would certainly have a uniform operation. And so, if they should decide against license. I ask, then, how can we tell whether this law, according to the construction claimed by the majority, will or. will not be uniform in its operation? The statement of the proposition, to my mind, is conclusive in favor of the construction for which I insist.

For these reasons, I do most respectfully dissent from the opinion of the majority of the court.