(100 N. W. 258.)

---

PETER PICTON v. THE COUNTY OF CASS ET AL.

Opinion filed June 23, 1904.

**Legislative Power Not Conferred by Chap. 161, Laws of 1903 — Administration — Discretion.**

1. Chapter 161, p. 213, Laws 1903, which provides for the enforcement of payment, by judicial proceedings, of taxes upon real property sold to the state or county, and remaining unredeemed for more than three years, and gives to the several boards of county commissioners of all counties in the state a discretionary authority to institute the proceedings therein provided for, is not vulnerable to the objection that it delegates legislative power to said boards. The act is complete and is in force in every county in the state by legislative will. The discretion committed to the several boards is administrative only.

**Act Is Constitutional — General Laws of Uniform Operation.**

2. Neither does the above act violate subdivision 23 of section 69 of the state constitution, which prohibits the legislature from passing local or special laws "for the assessment or collection of taxes," or section 11 of the constitution, which requires that "all laws of a

general nature shall have a uniform operation." The remedy afforded by this act is extended to each county in the state, and upon the same terms, and when invoked it is followed by the same consequences. It is therefore uniform in its operation, within the meaning of the above constitutional requirement.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Peter Picton against the County of Cass and others. Judgment for defendants, and plaintiff appeals.

Affirmed.

*Newman, Spaulding & Stambaugh,* for appellant.

The act in question, Chap. 161, Laws of 1903, vests in the board of county commissioners, power to decide upon the expediency and advisability of the collection of the general revenues of the state, and its municipalities within their respective counties. This is delegating legislative power to such board, and the legislature has no power to do this. Barto v. Himrod, 8 N. Y. 483; Ex parte Wall, 48 Cal. 279; Bank v. Brown, 26 N. Y. 467; Cooley on Taxation, (6th Ed.) 141; Santo v. State, 2 Ia. 165; State v. Geebrick, 5 Ia. 491.

Under the constitution no special laws shall be enacted in cases where a general law can be made applicable. Rice v. Foster, 4 Harr. 479; State v. Geebrick, 5 Ia. 491; Parker v. Commonwealth, 6 Pa. St. 50; People v. Collins, 3 Mich. 401; State v. Weir, 33 Iowa, 134; State v. Field, 17 Mo. 529; Mann v. State, 4 Ind. 342; In re Municipal Suffrage to Women, 36 N. E. 488.

The statute in question further delegates to the boards of county commissioners the power of suspending the operation of section 1271, of Rev. Codes, in their respective counties. If valid, such board surrenders all the county's right and title to the land bought in for taxes, and accepts in lieu thereof, the lien of the taxes as originally assessed, and thereafter has no title that it can convey. McHenry v. Kidder Co., 8 N. D. 413, 79 N. W. 875. Thus rendering inoperative said section 1271, and this the legislature has no power to authorize such boards to do. State v. Geebrick, supra; State v. Field, supra; Slinger v. Henneman, 38 Wis. 504.

An act must be such, that it not only may, but must, operate uniformly upon all subjects brought within its operation. Vermont Loan & Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; Duluth Banking Co. v. Koon, 84 N. W. 337; Ex parte Smith, 38 Cal. 702; Brooks v. Hyde, 37 Cal. 366; State v. Deets, 38 Pac. 798.

*Emerson H. Smith,* for respondents.

The legislature may make such provisions as it sees fit as to the taking effect and operation of laws. They may be absolute, or conditional and contingent. Smith v. City of Janesville, 26 Wis. 291; In re Richard Oliver, 17 Wis. 681; State ex rel v. O'Neill, 24 Wis. 149; State v. Parker, 26 Vt. 363.

The act in question simply provides for putting in operation Chap. 161 Laws of 1903. If there is nothing in the act that goes to the "determining power whether such shall be the law or not," the law is constitutional. People v. Fire Ass'n of Philadelphia, 92 N. Y. 317; State v. Parker, 26 Vt. 363.

The law is general and uniform in its operation and therefore constitutional. Edmunds v. Herbrandson, 2 N. D. 270, 50 N. W. 970.

The first law known as the "Wood's Law" was only temporary. A second "Wood's Law," Chap. 161, 1901, was to supplement the first. Angell v. Cass County, 11 N. D. 265, 91 N. W. 72.

The legislature likely passed the act of 1903 to afford remedy to counties not having availed themselves of the preceding enactments, which were temporary in their effect. Emmons County v. First Nat'l Bank, 9 N. D. 583, 84 N. W. 379; Cass County v. Security Investment Co., 7 N. D. 528, 75 N. W. 775.

YOUNG, C. J. This action was brought by a resident and taxpayer of Cass county against the county commissioners and clerk of the district court of that county to enjoin further proceedings for the collection of real estate taxes under the provisions of chapter 161, p. 213, Laws 1903, which is entitled: "An act to enable boards of county commissioners to institute proceedings to enforce payment of taxes on real property sold to the state or county for taxes, and remaining unredeemed for more than three years." The defendants filed a general demurrer to the complaint. This was sustained, and judgment was entered dismissing the action. The appeal is from the judgment, and error is assigned upon the order sustaining the demurrer. It is agreed that the only question involved is the constitutionality of the above act.

The act in question consists of 40 sections, and, as indicated by its title, its purpose is to confer upon the boards of county commissioners of the several counties of the state the power to institute the proceedings therein provided to enforce the payment of taxes on real

property which has been sold to the state or county for taxes, and has remained unredeemed for more than three years. Section 1 reads as follows: "The board of county commissioners in any county in this state is hereby authorized to cause the proceedings hereinafter provided to be instituted and conducted, whenever in the judgment of the said board it is advisable to do so. Whenever the board of county commissioners desire such proceedings to be instituted, it shall, at some regular meeting, pass a resolution to that effect, and the proceedings hereinafter provided shall be thereupon instituted forthwith." Section 2 requires the county auditor to prepare and file with the clerk of the district court a list, which, among other things, shall include every tract of land which has been sold to the state or county within three years prior to the passage of the resolution referred to in section 1, and upon which taxes have not been paid by redemption or assignment to an actual purchaser, and provides that the filing of such list with the clerk shall have the force and effect of the filing of a complaint in an action by the county against each piece of land described in the list, to enforce the taxes, interest, and penalty therein appearing against it, and shall also operate as a notice of the pendency of the action. Section 3 requires the clerk forthwith to make a copy of the list, and to attach to it a notice substantially in the form therein prescribed. Section 4 requires the auditor to cause the notice and list to be forthwith published for three consecutive weeks in a newspaper of general circulation published in the county. Section 5 gives every person who has an interest in the land 30 days in which to file his answer. Section 6 requires the clerk, upon default of answer, to enter judgment against each tract for the amount of taxes, interest, and penalty appearing from the list to be due thereon, and prescribes the form of the judgment. Section 7 regulates the procedure when an answer is filed. Other and subsequent sections provide for a sale of the lands by the sheriff under the judgment, and for the issuance of certificates to purchasers. It is also provided that after the resolution referred to in section 1 has been passed, and before the list provided for by section 2 has been filed with the clerk, any person may pay his taxes "by paying the amount of the tax for the several years, with interest at the rate of seven per cent per annum from the time when the taxes of each year become delinquent, and without any other interest, penalty or costs; and such payments shall relieve the piece or parcel of land on which the taxes shall be so paid from any

forfeiture to the county whether valid or invalid." Laws of 1903, p. 226, chapter 161, section 32. The lands against which the proceedings authorized by this act are directed are those which have been sold to the county at tax sales under the general revenue laws. The status of such lands, independent of the provisions of the act under consideration, is fixed by section 89, chapter 126, p. 289, Laws 1897 (section 1271, Rev. Codes 1899), which provides that "all parcels of real property bid in for the county under the provisions of this chapter and not redeemed or assigned within three years from the date of the certificate of sale, shall become the absolute property of the county and may be disposed of by the county auditor at public or private sale, as the county commissioners may direct, subject to such rules and restrictions as they may prescribe. * * * Any person having any interest in or lien upon any piece or parcel of forfeited land may redeem the same at any time after forfeiture, and before the sale thereof, by paying the amount due thereon."

The contention of the appellant is that the statute in question is unconstitutional for the alleged reason that "it delegates legislative power to the board of county commissioners, in this: That it authorizes said boards to determine whether or not it is advisable in their respective counties to collect portions of the public revenue, and authorizes such boards, in their discretion, to suspend the operation of section 1271, Rev. Codes, supra, within their respective counties." This contention is based upon section 25 of the state Constitution, which declares that "the legislative power shall be vested in a Senate and House of Representatives." It is well established that the exercise of the power thus intrusted to the Legislature cannot be delegated by that body. We cannot agree, however, to the contention that this act confers, or attempts to confer legislative power upon the several boards of county commissioners. Counsel for appellant assume that section 1 of this act gives to the board of county commissioners the power to decide whether this act shall or shall not be the law in that particular county, and that the very existence of the law itself depends upon the passage of the resolution referred to in that section. If this were true, it might be urged with propriety that the Legislature had not made a complete law, but had merely proposed a law, and intrusted its completion to the discretion of another body, and that the law is in fact made and adopted by the resolutions of the various boards. In that event the doctrine of the following cases, cited by the appellant against the validity of the act, would be in point: Barto v. Himrod,

8 N. Y. 483, 59 Am. Dec. 506; Ex parte Wall, 48 Cal. 279, 17 Am. Rep. 425; Bank v. Brown, 26 N. Y. 467; Cooley on Taxation (6th Ed.) p. 141; Santo v. State, 2 Iowa, 165, Am. Dec. 487; Geebrick v. State, 5 Iowa, 491. There is, however, in our opinion, no warrant for assuming that the board of county commissioners, under this act, shares in the exercise of the law making power. What is the power which is given to them by this act? Is it the discretion to determine whether the act shall be a law? Most certainly not. That discretion —and it is exclusively a legislative discretion—was definitely and finally exercised by the Legislature. The law is complete in every respect, and its existence as a law is not made dependent upon any contingency whatever. The Legislature declared, through an emergency clause, that, "this act shall take effect and be in force immediately after its passage and approval." What, then, is the discretionary power which is given to the county commissioners? It is clear that it is nothing more than an administrative discretion, in the language of the act, "to cause the proceedings" therein provided for to be instituted and conducted. In other words, the discretionary power which section 1 confers upon the several boards is not the legislative discretion of determining the policy and expediency of the law, and deciding whether or not it shall be the law, for, as we have seen, that discretion was fully exercised by the Legislature, but is an administrative discretion committed to them, as the fiscal agents of the county, to determine whether and when the machinery for the collection of real estate taxes provided by this act shall be set in motion. It confers the power upon all counties of the state alike to invoke the remedies therein provided. They may or may not avail themselves of its provisions, according to their discretion. The fact that it merely authorizes the proceedings, and does not command them to be taken, furnishes no legal objection to the validity of the law. All legislative acts are divided into two classes: First, those which imperatively command or prohibit the performance of acts; and, second, those which only authorize or permit acts to be done. The former may be classed as mandatory, and the latter as permissive. The latter class of laws are set in motion, not by command of the Legislature, but by the exercise of a discretion outside of the Legislature. It is probable that the major part of the acts of the Legislature are permissive, instead of mandatory. The distinction between legislative discretion and administrative discretion will be

more apparent by a liberal reference to a number of adjudged cases. The Supreme Court of Ohio, in C., W. & Z. Ry. Co. v. Commissioners, 1 Ohio St. 77, in overruling an objection that an act of the Ohio Legislature which depended for its effect upon a vote of the people in Clinton county involved a delegation of legislative power, said: "The whole body of our legislation, as well as that of every other state, is divided between laws which imperatively command or prohibit the performance of acts, and those which only authorize or permit them;" and, after referring to several classes of permissive laws, the enforcement of which rested in official discretion, said: "But because such discretion is given, are these and all similar enactments to be deemed imperfect and nugatory? It would take a bold man to affirm it. In what does this discretion consist? Certainly not in fixing the terms and conditions upon which the act may be performed, or the obligations thereupon attaching. These are all irrevocably prescribed by the Legislature, and, whenever called into operation, conclusively govern every step taken. The law is therefore perfect, final, and decisive in all its parts, and the discretion given only relates to its execution. It may be employed or not employed. If employed, it rules throughout. If not employed, it still remains the law, ready to be applied whenever the preliminary condition is performed. The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made." And quoted the following language, with approval, from the very able opinion of Judge Marshall in Slack v. M. & L. R. R. Co., 13 B. Mon. 1: "It is not essential to the character and force of a law that the legislative enactment should itself command to be done everything for which it provides. The legislative power to command a particular thing to be done includes the power to authorize it to be done. The act done under authority conferred by the Legislature is precisely as legal and valid as if done in obedience to a legislative command. * * * So far as such a statute confers authority and discretion, it is as obligatory from the first as the legislative power can make it; and, although its further practical efficiency may depend upon the discretionary act of some other body or individual, it is not derived from that discretion, but from the will of the Legislature which

authorized the act and prescribed its consequences." In Moers v. Reading, 21 Pa. 202, it was said that "half the statutes on our books are all in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. It cannot be said that the exercise of such discretion is the making of the law." And in Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716, it was said that "to assert that a law is less than a law, because it is made to depend on a future event or act, is to rob the Legislature of the power to act wisely for the public welfare whenever a law is passed relative to a state of affairs not yet developed, or to things future and impossible to be fully known. * * * Though contingent in form, the law is mandatory throughout in all it requires and all it determines. That is not less an act of sovereign power which says to the subject, 'Do this, and that shall follow; do that and another thing shall follow.' To the subject a discretion of acting is given, and, as he decides, the law pronounces the consequences. It is the sovereign which gives the law, not the subject. The true distinction is this: The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation. * * * If the determining power cannot be conferred by law, there can be no law that is not absolute, unconditional, and peremptory; and nothing which is unknown, uncertain, and contingent can be the subject of law." 

The distinction pointed out in the cases just referred to was approved by the Supreme Court of the United States in Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, in which the tariff act of 1890, known as the "McKinley Act," was held valid as against the objection that it conferred legislative power upon the President, by authorizing him to suspend those provisions of the act relating to the free introduction of certain foreign products. It was said that "nothing involving the expediency or the just operation of such legislation was left to the determination of the President. * * * Legislative power was exercised when Congress declared that the

suspension should take effect upon the named contingency. What the President was required to do was simply in execution of the act of Congress. It was not the making of law. He was the mere agent of the lawmaking department to ascertain and declare the event upon which its expressed will was to take effect." So, also, it was said in San Antonio v. Jones, 28 Tex. 19: "The Legislature may grant authority as well as give commands, and acts done under its authority are as valid as if done in obedience to its commands. Nor is a statute whose complete execution and application to the subject matter by its provisions made to depend on the assent of some other body a delegation of legislative power. The discretion goes to the exercise of the power conferred by the law, but not to make the law itself. The law in such cases may depend for its practical efficiency on the act of some other body or individual; still it is not derived from such act, but from the legislative authority. Legislation of this character is of familiar use, and occurs whenever rights or privileges are conferred upon individuals or bodies which may be exercised, or not, in their discretion." See, also, Johnson v. Martin, 75 Tex. 33, 12 S. W. 321; State v. Wilcox, 45 Mo. 458.

The Supreme Court of Nebraska had occasion, in the very recent case of Woodrough v. Douglas County, 98 N. W. 1092, to pass upon the very question we are now considering. The Nebraska act for the collection of real estate taxes by an action, like our own, was substantially adopted from Minnesota. It provided that "the county commissioners or board of supervisors of any county may by resolution adopted each year, elect to enforce the collection of delinquent taxes and assessments on real state under the provisions of this act, but are not required to do so." The contention that the act delegated legislative power was expressly overruled. The court said: "It is also contended that the act is void because it leaves the question of its enforcement to the arbitrary determination of the board of county commissioners, thus giving that body the power to suspend the operation of general and other revenue laws, contrary to the provisions of section 1, art. 3, of the Constitution. [Our section 25.] There is nothing in this contention. This act, taken in connection with the general revenue law, simply provides two methods of enforcing the collection of delinquent taxes and special assessments on real property. It does not delegate legislative power to the county commissioners, but gives them the option of a cumulative

remedy. The Legislature has declared what the law shall be when it takes effect; also upon what contingency it shall be put in operation; and when that contingency happens, it takes effect by legislative will. This does not amount to a delegation of legislative power. * * * The enforcement of the law in question is simply applying one of two methods of procedure to collect delinquent taxes, either of which the board is at liberty to choose. Therefore it is not open to the constitutional objection that it is a delegation of legislative authority.'

It is true that when the board passes the resolution provided by section 1, and thus elects to collect taxes upon the forfeited lands under the provisions of this act, all right, title or lien which the state has acquired under the sales made under section 1271, Rev. Codes 1899, is surrendered, and the state accepts in lieu thereof the rights prescribed by this act. See McHenry v. Kidder County, 8 N. D. 418, 79 N. W. 875, decided under a similar law. But it is the Legislature, and not the board of county commissioners, which declares this to be the consequence of the passage of the resolution.

The following additional authorities sustain our conclusion that the power conferred upon the boards of county commissioners by section 1 of this act is not a legislative power, but merely an administrative discretion which the Legislature had the right to confer: Bank of Rome v. Village of Rome, 18 N. Y. 38; Starin v. Town of Genoa, 23 N. Y. 439, 456; Bank v. Brown, 26 N. Y. 467; Clark v. Rochester, 28, N. Y. 605; People v. Fire Ass'n, 92 N. Y. 311, 44 Am. Rep. 380; Matter of 34th Street R. R. Co., 102 N. Y. 343, 7 N. E. 172; State v. O'Neill, 24 Wis. 149; State v. Sullivan, 67 Minn. 379, 69 N. W. 1094.

The further contentions that this act violates section 11 of the state Constitution, which requires that "all laws of a general nature shall have a uniform operation," and also subdivision 23 of section 69, which provides that "the Legislative Assembly shall not pass local or special laws * * * for the assessment or collection of taxes," fall with the argument already considered, namely, that the act is in force as a law by virtue of the resolution of the board of county commissioners, instead of by the will of the Legislature, and is for that reason operative only in such counties as pass the resolution. It is urged (1) that this act does not have "a uniform operation," and therefore violates section 11, supra; and (2) that, in legal effect,

it is a local or special law for the collection of taxes, and violates sub-division 23 of section 69, supra. The inconsistency of these contentions is apparent, for the same law cannot be "of a general nature," and thus belong to the class which are required to have a uniform operation, and at the same time be a local or special law. It follows that this act cannot violate both of the constitutional provisions above referred to, for the reason that it cannot be at the same time a law of a general nature and a local or special law. It is clear to us, however, that it violates neither, for, in our opinion, it is not a local or special law, but is, on the contrary, a law of a general nature, and has a uniform operation, within the meaning of the above constitutional provisions. It is argued that the act is operative only in those counties which adopt the resolution referred to in section 1, and from this assumption the conclusion is drawn that it is a local, and not a uniform, law. The error lies in the assumption. If it were true that the act is in force only in those counties which pass the resolution, and in no others, the argument would have great weight. But as we have already seen, the act by the legislative will is made applicable to every county in the state. It does not apply to a single county, or to certain enumerated counties, or to counties belonging to an arbitrary class, but to every county in the state, regardless of whether they do or do not pass the resolution referred to in section 1. The remedy which is given for the collection of taxes upon the lands described in the act is given to each county in the state; may be set in motion by the same local authorities, namely, the board of county commissioners; the steps necessary to apply the remedy are the same; and the act declares the same consequences, in whatever county proceedings are taken under it. The resolution of the board does not adopt the act for that county, nor render it applicable. It is in force, applicable, and available before the resolution is passed. The resolution is passed by the board under the law, and by virtue of it, in the exercise of an administrative discretion, and merely constitutes the first step in the enforcement of the remedy therein provided.

The questions we have considered were before the Supreme Court of Iowa in Dalby v. Wolf, 14 Iowa, 228. It was contended in that case that an act of the Legislature which authorized the people of the several counties to decide by a majority vote to restrain swine and sheep from running at large was void for the same reasons urged here. This case is peculiarly in point, for the reason that the

constitutional provision requiring uniformity in operation of laws of a general nature, which is now found in the Constitutions of a number of states, had its origin in Iowa. The court said: "Plaintiff claims that this law is in conflict with section 6, art. 1, of the Constitution, which declares that 'all the laws of a general nature shall have a uniform operation,' and for the further reason that it depends for the validity upon the vote of the people, and is not the expressed will of the Legislature. Neither of these positions is tenable. They utterly mistake the intention of the constitutional provision quoted, and misapprehend the scope and spirit of the decisions in this and other states which hold that the Legislature cannot refer to the people the question whether a particular act shall become a law. In all the cases referred to, it will be found that, as in Thorne v. Cramer, 15 Barb. 112, and Bradley v. Baxter and others, Id. 122, the question submitted was whether or not a proposed law should become operative. Thus in the first case cited it was provided by the statute that 'the electors shall determine, by ballot, at the annual election to be held in November next, whether this act shall, or not, become a law.' If a majority voted against it, then it was to be null and void; if for it, then it was to take effect on a day named. And such legislation was expressly condemned by this court in Santo v. State, 2 Iowa, 165, 63 Am. Dec. 487, which was recognized and followed in Geebrick v. State, 5 Iowa, 491. The law in question, however, is not obnoxious to this objection. The popular will is expressed under and by virtue of a law that is in force and effect, and the people neither make nor repeal it. They only determine whether a certain thing shall be done under the law, and not whether said law shall take effect. The law had full and absolute vitality, when it passed from the hands of the Legislature, and the people, under the 'rule of action' therein given for their government, proceeded to act. The same rule—the same law—was given to all the people of the state, to all parts of it; the same method for taking the vote was presented for all the counties; the same penalties were attached. As a result of the vote, a different regulation, of a police nature, might exist in one county from what existed in another, just as, under the same section [114], one county might determine by a popular vote that a higher rate of tax should be levied than that provided by the general law, when the county warrants were depreciated, while another voted against it. So it is in principle like the provision which submits the queston whether money should be

borrowed to aid in the erection of public buildings. One county might decide in favor of such loan, while another rejected it, and yet the law under which they vote is operative and in full effect. Not only so, but it gives a uniform rule to all the people and all the counties alike."

See, also, People v. Judge, etc., 17 Cal. 554; French v. Teschemaker, 24 Cal. 544; Brooks v. Hyde, 37 Cal. 366; Ex parte Smith, 38 Cal. 702; People v. C. P. R. R. Co., 43 Cal. 398; Kelley v. State, 6 Ohio St. 270; McGill v. State, 34 Ohio St. 228—in which the "glittering generality of the language" of section 11 has been considered and construed.

Our own court, speaking through Mr. Justice Bartholomew, in Vermont Loan & Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. 318, in harmony with the opinion of other courts, said: "The uniform operation required by this provision does not mean universal operation. A general law may be constitutional and yet operate in fact only upon a very limited number of persons or things, or within a limited territory. But so far as it is operative, its burdens and benefits must bear alike upon all persons and things upon which it does operate, and the statute must contain no provision that would exclude or impede this uniform operation upon all citizens, or all subjects and places, within the state, provided they were brought within the relations and circumstances specified in the act." See, also, cases cited in opinion. It has already been noted that the act under consideration contains no provision restricting its operation. On the contrary, it is in force and available in every county in the state. It is probable that all counties will not avail themselves of the remedy provided by this act at the same time. Some may proceed in one year, others later, and some possibly not at all. The rights of the county and the state, as well as the tax debtor, in reference to these forfeited lands, in counties where the remedy is invoked, will be different from those which exist in counties where it is not resorted to. This, however, is merely a difference arising from the application of different remedies. The consequences are the same in each county in which the remedy is applied, and, as we have seen, it is applicable to every county in the state. That satisfies the requirement of the Constitution that laws of a general nature shall be of uniform operation. This provision does not require uniformity in the execution of laws. If it did, practical legislation would be

quite impossible.   It was contended in Groesch v. State, 42 Ind. 547, that a license law which committed to the board of county commissioners the discretion to issue permits to sell intoxicating liquor violated the constitutional provision which required that "all laws shall be general and of uniform operation throughout the state."   The court said: "Is the act in question, or the parts or features thereof which are in question, general and of uniform operation throughout the state?   We think the act is general.   It is in force and operation in all parts of the state.   It is only in a qualified sense that any law can be said to be of uniform operation throughout the state.   A law for the punishment of crime, the provisions of which are alike applicable to all parts of the state, must necessarily lack uniformity, in one sense, in its operation, not only as to persons, but also as to localities.   It operates in those places where its provisions are violated, and upon those persons who transgress them.   Under the same circumstance and conditions its operation is uniform.   The law which affords civil remedies is uniform in its provisions, and, under the like circumstances, is uniform in its operation throughout the state.   It is not required that every man shall resort to that remedy, or that in each locality there shall be the same number or any number of persons who shall resort to the remedy, in order to make the law uniform in its operation, in the sense in which the terms are used in the Constitution.   Such is the case, under all circumstances, when one or more persons are by law required to do some act or acts, upon or in consequence of which the law is to operate."   The same contention was urged in Leavenworth v. Miller, 7 Kan. 479. 12 Am. Rep. 425.   In denying it, and holding that an act authorizing counties to subscribe for stock, and to issue bonds to aid in the construction of railroads, did not violate this provision, the court said: "The act under consideration is so obviously in harmony with this section that the question attempted to be raised upon its supposed incongruity needs no elucidation from us.   All the provisions of said act are expressly enacted for the whole state, and for every part of the state; and it is no more necessary that the same amount of stock be taken in each and every county in the state, in order that the act shall have a uniform operation therein, than that the same number of men shall be executed in each county of the state, in order that the law punishing murder in the first degree shall have a uniform operation throughout the state."   See also, Haney v. Commissioners, 91 Ga.

770, 18 S. E. 28; Hellman v. Shoulters, 114 Cal. 136, 44 Pac. 915, 45 Pac. 1057. The case last cited is particularly in point, for it holds that an act which gave an alternative mode of procedure for making street improvements differing substantially in its consequences from one already existing, and leaving the choice of modes to the judgment of the city council, did not violate the constitutional provision requiring uniformity of operation. The court said: "If the subjects upon which the law is to operate are municipalities, it is obvious that the fact that alternative modes of procedure are open to the choice, or submitted to the judgment, of the council, is no proof of lack of uniformity." This, as we have already seen, was the view of the Supreme Court of Nebraska in reference to an act like that under consideration.

This is the third law of this nature enacted by the Legislature of this state. The first act (chapter 67, p. 76, of the Laws of 1897) was available for only a single effort, and authorized judgment for only such real estate taxes as were delinquent in 1895 and prior years. Only a limited number of counties took advantage of that act. The second act (chapter 161, p. 213, of the laws of 1901) attempted to extend the remedy given by the 1897 act to those counties which had not proceeded under it. The act, by express terms, was operative only in counties which had not proceeded under the former act. In addition to this limitation, it gave to the counties wherein it was operative a right to include in the action subsequent taxes for a number of years. This remedy, by the very terms of the act was denied to those counties wherein the act was not operative. For this reason, we held that the act was a special law for the collection of taxes in certain counties only, and in conflict with subdivision 23 of section 69 of the state Constitution. Cass County v. Bank, 9 N. D. 265, 83 N. W. 12. The present act is not open to this objection, for, as we have seen, it is applicable to all the counties in the state upon the same terms, and is uniform in operation, within the meaning of the Constitution.

It follows from what we have said that the demurrer was properly sustained. Judgment affirmed. All concur.