## CONSENTS OF ABUTTING PROPERTY OWNERS NOT NECESSARY TO A STREET RAILWAY GRANT.

Court of Appeals for Hamilton County.

THE CITY OF CINCINNATI, THE CINCINNATI TRACTION COMPANY AND THE CINCINNATI STREET RAILWAY COMPANY v. DAVID L. CARPENTER ET AL.

Decided, June 1, 1915.

*Constitutional Law—Control and Dominion Over the Streets of a Municipality—Vested in Council for Use of the Public—Rights of Abutting Owners Limited to Ingress and Egress—Unconstitutionality of the "Consent" Statutes, Which Are Based on an Arbitrary Classification of Individuals.*

The provision of Section 9105, requiring that the consents of abutting property owners shall be produced before council can, by ordinance, grant the right to construct or extend a street railway line, gives to such property owners a voice in determining a question over which the municipality, speaking through its council, has exclusive control, and the provision is therefore a delegation of legislative power and is unconstitutional and of no effect.

*Walter M. Schoenle* and *Alfred Bettman,* for City of Cincinnati.

*Joseph Wilby* and *George H. Warrington,* for Cincinnati Traction Co. and Cincinnati Street Railway Co.

*Dinsmore & Shohl,* for defendants in error.

GORMAN, J., JONES (E. H.), J., and JONES (Oliver B.), J., concur.

This is a proceeding in error to reverse a judgment of the Superior Court of Cincinnati perpetually enjoining the plaintiffs in error, the Cincinnati Traction Company and the Cincinnati Street Railway Company, from constructing and operating under ordinance No. 104—1913, on the Reading road between Clinton Springs avenue and the Paddack road, any street railway tracks or routes, and from placing any poles, wires, etc., for the operation thereon of an electric street railway.

On the 11th day of February, 1913, the council of the city of Cincinnati passed an ordinance, No. 104—1913, granting to the Cincinnati Street Railway Company and the Cincinnati Traction Company permission to extend the Avondale street railway line and route from a point at or near the intersection of Mitchell avenue, otherwise known as Clinton Springs avenue, over and along the Reading road to the intersection of the Paddack road; thence over the Paddack road northwardly to a point where the Norfolk & Western Railway crosses said Paddack road in or near the suburb of Bond Hill. The ordinance appears to be regular and to grant everything necessary to enable the said companies to construct and operate this extension without increase charges of fares.

It is set forth in the ordinance, and admitted to be true, that the consents of the owners of more than a majority of the front feet of the property abutting on the Paddack road were produced to the council before the ordinance was adopted, but that the consents of the abutting property owners on the Reading road were not produced to council. The council of said city, notwithstanding the failure to produce in writing the consents of the owners of a majority of the front feet of the property on the Reading road, declared in the ordinance that the necessity and importance of this extension warrants the granting of the permission therefor without such consents.

On April 23, 1913, David L. Carpenter and several others, property owners on Reading road, jointly filed a petition in the Superior Court of Cincinnati to enjoin the Cincinnati Traction Company and the Cincinnati Street Railway Company from constructing or operating said street railway extension over Reading road under said ordinance, alleging that the ordinance is null and void because owners of a majority of the front feet of the property on Reading road between Mitchell avenue and Paddack road did not consent to the construction and operation of said extension.

The city of Cincinnati upon its own motion, through its solicitor, was made a party defendant and filed an answer to the

petition admitting that plaintiffs were property owners on the Reading road between the points aforesaid, and practically admitting all the allegations of the petition, and then set out a copy of the ordinance granting the permission to the said corporations to extend their tracks and routes as aforesaid on the terms and conditions therein set forth.

Defendants, the Cincinnati Traction Company and the Cincinnati Street Railway Company, demurred to the petition, and the plaintiffs demurred to the answer of the city of Cincinnati. These demurrers raised the question of law as to the jurisdiction or authority of the council of the city of Cincinnati to grant a right to extend the tracks of an existing street railway over any street or portion of a street without the written consent of the owners of more than one-half of the feet front of the lots and lands abutting on the street along which it is proposed to construct such extension.

The demurrers to the petition were overruled, and the demurrer of the plaintiffs to the answer of the city of Cincinnati was sustained, and the court below held the ordinance granting the right. to extend, null and void, and perpetually enjoined the defendants, as above stated.

All of the defendants below prosecute error, and join in the prayer of the petition in error for a reversal of the judgment.

The sole question, therefore, submitted to the court, is one of law: Did the court below err in holding the ordinance in question to be null and void because of the absence of the written consents of the owners of the prescribed number of front feet of the abutting lots and lands on Reading road between Mitchell avenue and Paddack road?

Sections 3777 and 9105 of the General Code are the statutes relied upon by defendants in error to sustain their contention and the judgment of the learned judge who decided the case in the court below.

Section 3777, General Code, among other things provides that:

"The council of a municipality may grant permission by ordinance to any corporation, individual or company owning or

having the right to construct a street railroad, to extend the track, subject to the provisions of law relating to the construction, operation and extension of street railways within or without or partly within or without any municipal corporation, on any street or streets where council deems such extension beneficial to the public.''

The provisions of law *"relating to the construction, operation and extension of street railways within or without or partly within and without any municipal corporation"* are to be found in Chapter 10, Division II, Title IX, Part Second of the General Code, under Private Corporations, Section 9105.   Section 3777 above referred to is found under Part One, Title XII, Division III, Municipal Corporations, in the General Code.

Section 9105 among other things provides that:

"No such grant shall be made until there is produced to council, or the commissioners, as the case may be, the written consent of the owners of more than one-half of the feet front of the lots and lands abutting on the street or public way, along which it is proposed to construct such railway or extension thereof,'' etc.

The grant referred to by this section, by reference to Sections 9100-9101, means the grant to construct or extend street railways within or without or partly within *and* partly without any municipal corporation.   There appears to be no provision of law referred to in Section 3777, General Code, relating to the construction, operation and extension of street railways partly within *or* without any municipal corporation, unless it be the provisions of this Section 9105, General Code, which relates to constructions and extensions within or without or partly within *and* partly without municipal corporations.   We shall assume notwithstanding the use of the word "and" instead of "or" that Section 3777 when it speaks of the provisions of law relating to the "extension of street railways * * * partly within *or* without any municipal corporation" has reference to Section 9105, General Code, requiring consents to grants

of extensions within or without or partly within *and* without any municipal corporation.

It is contended by the plaintiffs in error that this Section 9105, General Code, requiring the consents of abutting property owners to be produced before the council can by ordinance make a grant to construct or extend a street railway, is unconstitutional because it delegates to property owners on a street or portion of a street the power to determine whether or not any ordinance shall be adopted by council, the legislative body of municipal corporations, granting permission to construct or extend street railways on the streets of the municipality. It gives such property owners a voice in the determination of the question of whether or not such an ordinance shall be adopted.

The grant, in municipalities, to construct or extend street railways can be made by *ordinance* only and by the *council* only. Section 9101, General Code.

The granting of a franchise to construct or extend a street railway by ordinance is an exercise of legislative power pure and simple. The control and dominion over the streets and highways of a municipality, to keep the same open, in repair and free from nuisances is expressly delegated to the council by Section 3714, General Code.

The title to the streets and highways within a municipality, under Section 3585, General Code, and the decisions of our courts, is vested in the municipality in trust for the use of and by the public. *St. Ry.* v. *Cumminsville*, 14 O. S., 523; *Callen* v. *Electric Light Co.*, 66 O. S., 166; *L. & N. R. R. Co.* v. *Cincinnati*, 76 O. S., 481.

The administration of the trust reposed in the council over the streets and highways has been delegated to it by the Legislature, and must be for the use and benefit of the whole public and not for a part thereof. The granting of a franchise to construct or extend a street railway by ordinance is a legislative function and the power to make the grant by the Legislature, or by the council if authorized to act for the Legislature, is limited only by the rights of the abutting property owners.

It has been held that the ordinary use of a street for public travel does not in any way affect the property rights of the abutting owners. They have the right of access to their property from the street, the right of ingress and egress—a property right which can no more be taken from them under the Constitution and decisions, without compensation, than can their lands be taken without first being paid or secured to be paid. Unless the laying of a street railway track in a street affects the abutting property owner's egress or ingress, no property rights are invaded by the laying of the tracks or the operation of the street cars thereon. If the tracks should be laid so near to the property line as to interfere with his access to this property; then the owner would have a right to require compensation before the laying of the tracks could be done. *Street Railway* v. *Cumminsville,* 14 O. S., 523. It was said by Judge Ranney, announcing the opinion of the court in this case, on pages 544 and 545:

"The use of a highway for the purposes of a street railroad, involves the application of new appliances and modes of travel, rather than of any new principle. * * * So far as the carrying of passengers by this mode is concerned, it differs in nothing from the exercise of the common right of carrying them by coaches or omnibuses; and everything needing a grant or the further authority of law, is the right to place and maintain in the highway, the necessary conveniences for this new description of carriages."

The right to consent or withhold consent to construct or extend a street railway has been held not to be a property right, but a personal right. It was not given for the purpose of protecting a property right. *Traction Co.* v. *Parish,* 67 O. S., 181; *Roberts* v. *Easton,* 19 O. S., 88.

All the property rights of the abutters are fully protected by the Constitution, those of the minority as well as of the majority owners of the feet front. If in the laying of street car tracks or in the operation of the cars over the tracks any property right should be affected, then any and all the abutting owners

have a remedy by resorting to the courts to require compensation to be paid, and this right may be asserted by the minority owners of the front feet as well as by the majority owners, and regardless of whether consents were given or not given. Those who give their consents do not thereby preclude them-selves from requiring compensation to be paid if their right of access to their property is affected.

The Supreme Court has never yet directly passed upon the constitutionality of this legislation.

In the case of *Isom* v. *Low Fare Ry. Co.*, 10 C.C.(N.S.), 89, the Circuit Court of Cuyahoga County, Judges Wilson (of the Second Circuit), Donahue (of the Fifth Circuit), and Wildman (of the Sixth Circuit) held these sections, then Sections 1536-188 and 1536-189, requiring consents as a condition precedent, to be a valid and constitutional exercise of legislative power. The point was made in the attack upon them that they create a favored class upon whom a privilege is bestowed to the exclu-sion of others having equal rights, and that the privilege which the owners of a majority of the abutting feet frontage of lots and lands enjoyed in being allowed to consent or withhold consent to the grant of a right to construct and operate a street railway over a given street, operated as an arbitrary classification of individuals. It was contended that this privilege extended to these property owners is violative of Section 1 of the Fourteenth Amendment of the Constitution of the United States, in that it denies to all persons equal protection of the law, and deprives persons of their property without due process of law. An examination of the printed record in that case, No. 10871 Supreme Court, at page 6, fifth assignment of error in the petition in error, will disclose that this was the constitutional objection raised to the validity of these consent statutes. The question of their conflict with any of the provisions of the Constitution of Ohio was not raised in that case. A reference to the decision in this case by the circuit court, pages 91, 92 and 93, will disclose that the court was referring to the objections urged to the validity of these consent sections—that they provided for an

arbitrary classification of individuals not based upon any substantial fundamental reason therefor; that the creation of such a class and conferring upon it such a privilege (of consenting or withholding consents) as is conferred by these statutes were and are a mere arbitrary classification, and grant special privileges to such favored class. Now such an objection in the nature of things must be founded on the claim that these statutes are violative of the Fourteenth Amendment of the Federal Constitution and the section thereof above referred to. The judgment of the circuit court was affirmed without report by the Supreme Court, 77 O. S., 638. There were several other points raised in that case, and in view of the past utterances of the Supreme Court itself we are not at liberty to speculate as to the grounds upon which the affirmance was based. The point was not urged, either in the circuit court or in the Supreme Court, that these sections are unconstitutional because there was a delegation of legislative power to these individuals by the General Assembly. The circuit court recognized the force of the contention made that these statutes are unconstitutional on the grounds above stated, but was constrained to hold that the constitutionality of this legislation is no longer an open question in this state by reason of the decisions of the Supreme Court in the reported cases of *Roberts* v. *Easton,* 19 O. S., 78; *Railway Co.* v. *Neare,* 54 O. S., 153; *Traction Co.* v. *Parish,* 67 O. S., 181, and other cases not cited.

From these cases in which the Supreme Court recognized this legislation and held that the consents were conditions precedent which must exist in order to authorize councils of municipalities to pass an ordinance making a grant to construct or extend a street railway, the circuit court in this Isom case concludes that the Supreme Court is committed to the doctrine of the constitutionality of the legislation; and that in view of the many declarations of that court sustaining these statutes and requiring full compliance therewith, the rule of judicial subordination would require a court of inferior jurisdiction to hold the same constitutional and thus pass the question on to the

Supreme Court as the only tribunal which has a right to review and reverse its declarations of the law.

These conclusions of the Cuyahoga circuit court are urged upon this court as reasons why we should adopt the position taken by that court in the case cited, and pass the question of the constitutionality of this legislation up to the Supreme Court in the instant case. The rule of judicial subordination is claimed to operate as strongly in this case as in the one decided by the Cuyahoga county circuit court. But it appears to us that the question as to whether or not these sections are violative of the Ohio Constitution was not presented to the circuit court or to the Supreme Court in this Isom case. Certainly the question of the delegation of legislative power was not raised or presented, nor have we been cited to any reported case in which the question of the conformity of these sections to the Ohio Constitution has been raised or presented to the Supreme Court.

It is a well settled rule of the Supreme Court of this state that until a constitutional case is raised and argued and specifically decided, it will be deemed an open question. Many authorities in support of this proposition can be cited.

In *Dayton* v. *Bauman*, 66 O. S., 379, at page 394 the court says:

"It is urged that to affirm the judgment in the case at bar involves the overruling of *Meissner* v. *Toledo*, 31 O. S., 387; *Chamberlain* v. *Cleveland*, 34 O. S., 551; *Raymond* v. *Cleveland*, 42 O. S., 522; and *Krumberg* v. *Cincinnati*, 29 O. S., 69. * * * *Meissner* v. *Toledo* construed the statutes then in force, and did not pass upon their constitutionality, but assumed them to be constitutional. The question of their constitutionality was not raised or decided. The case of *Chamberlain* v. *Cleveland*, 34 O. S., 551, was decided in the light of *Cleveland* v. *Wick*, 18 O. S., 303, and the question as to whether money could be raised by assessment to pay for private property taken for public use was not raised, and was not argued or decided, but was conceded by counsel and assumed by the court."

In the case of *Milwaukee, etc., Insurance Co.* v. *Russell,* 65 O. S., at 257 of the opinion the court says:

"Assuming that they might have been made, it is perfectly clear that no question of the kind was either passed upon or considered by the court, or brought to its attention, or even alluded to by counsel. This plainly appears from the report of the case. It has long been the established rule of this court, as well as the settled law on the subject, that: 'A reported decision, although in a case where the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a principle not passed upon nor raised at the time of the adjudication.' *Fouts* v. *State,* 8 O. S., 98, 123. Where the questions were not raised nor considered, 'it is as if they were not in the case at all.' *State* v. *Pugh,* 43 O. S., 121, 123; Wambaugh's Study of Cases, Sec. 17."

To the same effect are the decisions in *State, ex rel Attorney-General,* v. *Beacon,* 66 O. S., 491-507; *State, ex rel Guilbert,* v. *Yates,* 66 O. S., 548.

As we have seen that the constitutional question raised as to these consent sections in the Circuit Court of Cuyahoga County and the Supreme Court in the Isom case, *supra,* was that of the Federal Constitution—Fourteenth Amendment—and not the question of the violation of the Ohio Constitution, and inasmuch as no constitutional questions were raised, argued or decided in *Roberts* v. *Easton,* 19 O. S., *Neare* v. *Railway Co.,* 54 O. S., and *Traction Co.* v. *Parish,* 67 O. S., in which decisions these consent sections were assumed to be constitutional and valid, we feel that we are not precluded from considering the question of their validity under the Constitution of Ohio, in view of the rule adopted by the Supreme Court above referred to.

We come now to consider the question of whether or not these consent sections are violative of the provisions of the Ohio Constitution which vests in the General Assembly all legislative power, and which power can not be delegated to any other persons or body; and in the determination of this question we shall endeavor to apply the light of reason and such authorities as we find which will aid us in the solution of the problem.

In the case of *C., W. & Z. R. R. Co.* v. *Commissioners of Clinton County,* 1 O. S., 77, Judge Ranney, in announcing the

decision of the court in an able and exhaustive opinion, considers the question of the Legislature delegating the authority with which it is vested by the Constitution, Article II, Section 1, on page 87, well says:

"That the General Assembly can not surrender any portion of the legislative authority with which it is invested, or authorize its exercise by any other person or body, is a proposition too clear for argument, and is denied by no one."

And on page 88, he says:

"The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made."

Now if we apply this very lucid and rational rule to the legislation under consideration relating to the giving of consents to the making of a grant by ordinance to a street railway company, what is the situation presented? The council of a municipality, the legislative body in the exercise of a legislative function, finds itself unable to pass a valid ordinance making a grant, unless these abutting property owners shall be consulted, give their consent in writing—vote upon the question, as it were, of passing the ordinance. In giving or withholding their consent to the ordinance, are they not as much participating in the exercise of legislative functions as the members of council? Has not the Legislature delegated to them a voice, in the making of this grant, in the passage of the ordinance? Could the Legislature by statute provide that street railways may be constructed or extended over highways or streets only on the condition that the property owners first consent that such a law may be enacted? Would not such a law be violative of the principle laid down by Judge Ranney in the above cited case, that there can be no delegation of power to make the laws? The ordinance can not be passed until the property owners say it may. Surely

they then have a voice in making the law, and this they may not have without receiving a delegation of legislative power from the Legislature. The grant of such a power—the right to have a voice in the legislation—can not be delegated to them.

In the case of *Harmon* v. *State*, 66 O. S., 249, the Supreme Court in passing upon the constitutionality of the Roberts law, which delegated to a district examiner of steam engineers the power and authority to grant or withhold a license to operate a steam engine, says, on page 253:

"Thus allowing the examiner of a district to, in effect, make the law for his district, limited only by his will as to what shall constitute the standard of the qualification of engineers, is granting legislative power to such examiner, and the appeal to the chief examiner does not change the matter.

"By Section 1 of Article II of the Constitution all legislative power is vested in the General Assembly, and this power can not be delegated to individuals or officers. *Mathews* v. *Murphy*, 63 S. W. Rep., 785.

"Said Section 6 of the Roberts law is therefore in conflict with said Section 1 of Article II of the Constitution, and is void."

Is there any more a delegation of legislative authority when the statute makes the consent of a district examiner a condition precedent to securing a license to operate a steam engine, than when a statute provides as a condition precedent that no street railway may be laid in a street of a municipality without the consent of certain property owners on the street? We are unable to see any distinction in principle, between the two cases; and as to the effect of the two laws, the one relating to the consent of property owners is fraught with much graver consequences than the other law.

See, also, *State, ex rel Allison,* v. *Garver*, 66 O. S., 555-564, in which case the court says on page 564, in passing upon the constitutionality of the law to limit the compensation of county officers in certain counties depending upon the vote of the electors of the county:

"Hence, the taking effect, as well as the enforcement of the statute, is made to depend on the approval of another authority than the General Assembly, namely, the will of a majority of the electors. The entire legislative power of the state is vested in the General Assembly and  *  *  *  it could not be delegated." Citing *R. R. Co.* v. *Com'rs,* 1 O. S., 77, 87.''

"One of the settled maxims in constitutional law is, that the power conferred upon the Legislature to make laws can not be delegated by that department to any other body or authority. *  *  *  The power to whose judgment, wisdom and patriotism this high prerogative has been intrusted can not relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." *Cooley on Const. Lim.,* 7th Ed., 163.

"But this does not so operate as to prevent the legislative bodies from providing for the organization, creation or abolition of municipal corporations and vesting them with such legislative power as it deems necessary for purely local purposes. *  *  *  The Legislature in these cases is not regarded as delegating its authority, because the regulation of such local affairs as are commonly left to local boards and officers is not understood to belong properly to the state; and when it interferes, as sometimes it must, to restrain and control the local action, there should be reasons of state policy or dangers of local abuse to warrant the interposition." *Cooley on Const. Lim.,* 7th Ed., 264-265; *Bliss* v. *Kraus,* 16 O. S., 55.

But conferring power and authority on municipal corporations or the councils thereof, is quite a different proposition from conferring authority on private individuals to consent or withhold consent to legislative acts of councils or the Legislature.

Local option laws depending for their operation upon a vote of all the people of the district to be affected have been lately held to be valid and constitutional, upon the theory that the voice of the people was not required to bring the law into existence, but only to give it operative force and effect, and there-

fore there is no delegation of legislative power to pass the law in such cases, but only a delegation of power to determine whether or not the law, after it is passed, shall be operative in the district. And while the weight of authority supports the validity of local option laws, nevertheless there are respectable authorities holding that such laws are unconstitutional as a delegation of legislative power. See *Ex parte Wall*, 48 Cal., 279; *Rice* v. *Foster*, 4 Harr. (Del.), 479; *Maize* v. *State*, 4 Ind., 342; *State* v. *Geebrick*, 5 Ia., 495.

While local option laws are sustained in this state they appear to be held valid on the ground that they are merely regulatory laws under the police power and the constitutional provision giving the Legislature power to regulate the traffic in intoxicating liquors.

In *Gordon* v. *State*, 46 O. S., 607, page 633, the court says:.

"The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made."

It is urged that if the provisions relating to consents should be held unconstitutional, then the entire structure of legislation relating to street railway grants will fall and there will be no power to grant a franchise at all. We do not think that any such consequence would follow.

A part of a statute may be unconstitutional and void and the remainder valid. *29 Am. & Eng. Ency. of Law*, 2d Ed., 570, and cases cited; *Kelley* v. *State*, 6 O. S., 269; *State* v. *Yates*, 66 O. S., 546-548.

An examination of Sections 3770, 9105, 9106 and 9107, which are the only sections in which consents are referred to, discloses that they or the parts thereof relating to consents may be expunged entirely from the General Code, and there will remain ample power in the municipality to grant a franchise to construct

or extend a street railway and prescribe all the conditions needed to protect the public and the corporation or person to whom the grant may be made.

Furthermore, it may be that council under the grant of power in Section 3714, General Code, would have ample power to grant permission to construct or extend street railways by virtue of its control over the streets. See *Hattersley* v. *Waterville*, 4 C.C.(N.S.), 243.

No possible harm can result to the property owners by the repeal of these statutory provisions or by a judicial determination of their unconstitutionality. The property owners, both the majority and the minority, on every street over which a street car line is proposed to be operated have their remedy in case their property rights as abutters are affected by the construction or extension of a street railway, in an action for compensation.

The right to consent or withhold consent, is not a property right but a mere personal privilege conferred upon the owners of a majority of the foot frontage of the lots and lands abutting on the street—a right withheld from the minority. It affords an opportunity to selfish and non-public spirited property owners on a street to prevent needed transportation facilities to an entire municipality, to inconvenience the public, to check the development of a city. It might afford an opportunity to barter and sell this privilege given by the Legislature—to traffic in a gift of the General Assembly. It affords no possible benefit to the holders of the privilege, and works a great injustice to the public who are entitled to use the highways in as full and complete a manner as the development of modern modes of travel will permit.

No attempt has ever been made to defend these statutes. They confer upon a favored class a personal privilege or an interest in the public estate, the public highways, which they can and in many instances do sell and resell for money and other valuable considerations, instances of which appear in the Parish case, 67 O. S.

The Legislature, in our opinion, might with as much right and justice confer upon abutting property owners along a public highway the special privilege of consenting or withholding their consents to the pedestrians or other vehicles than street cars, such as wagons, carriages, automobiles and omnibusses, to travel the streets and highways whereon their property abuts. But as the street car is no additional burden upon the street, and its operation is not an interference with the property rights of the abutter, upon what principle of right or justice can the Legislature confer upon these private individuals a part of the sovereign legislative power of the state to control or have a voice in controlling the public ways, the title to which is held as a sacred trust for the use and benefit of the whole people?

Upon a full consideration of the question involved, after having been enlightened by the cogent oral arguments of able counsel and the exhaustive briefs submitted by them, we are of the opinion that the legislation relating to consents required to be produced under Sections 3770, 3777 and 9105 of the General Code, is unconstitutional and void, and that the ordinance passed by the council of the city of Cincinnati, above referred to, is a valid legislative enactment without the consents of the property owners on Reading road or on Paddack road.

The judgment of the superior court will therefore be reversed.